**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RACHEL M. CHANEY, DOUG C. DAVIS, JULIE M. DAVIS, GARY W. DOSS, AND REBECCA R. DOSS,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>PERDUE FARMS INC., FPP BUSINESS SERVICES INC. d/b/a PERDUE FARMS INC., PERDUE AGRIBUSINESS LLC, PERDUE AGRIBUSINESS INCORPORATED d/b/a PERDUE AGRIBUSINESS LLC, PERDUE AGRIBUSINESS GRAIN LLC d/b/a PERDUE AGRIBUSINESS LLC, PERDUE FOODS LLC, and PERDUE FOODS INCORPORATED d/b/a PERDUE FOODS LLC,<br><br>　　　　　Defendants. | C.A. No.: 1:24-cv-02975 |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS OR STAY**

## TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Complaint Allegations and Additional Background ............................................................. 3

Legal Standard .................................................................................................................... 6

Argument ............................................................................................................................. 6

   I.  Plaintiffs Fail to Plead Any Viable Causes of Action ................................................. 6

      A.  Plaintiffs' Failure to Plausibly Plead Causation Based on Exposure to PFAS from Defendants' Conduct Requires Dismissal of Counts I-V. ............................. 7

      B.  Plaintiffs' Pleading Is Deficient as to Each Individual Claim ................................ 9

          1.  Plaintiffs Have Failed to Plead Harm Stemming from an Abnormally Dangerous Activity (Count I). ............................................................................ 9

          2.  Plaintiffs Do Not Plausibly Allege that Defendants Negligently Ignored Foreseeable Harms (Count II) ........................................................................... 13

          3.  Plaintiffs Cannot Pursue a Private or Public Nuisance Claim Against Defendants in Federal Court in the First Instance (Counts III and IV). ............... 14

          4.  Plaintiffs Do Not Plausibly Allege a Claim for Trespass (Count V). ................... 15

          5.  Plaintiffs' Claim for Vicarious Liability is Duplicative (Count VI). ..................... 17

          6.  Plaintiffs' Request for a Preliminary and Permanent Injunction is a Remedy, Not an Independent Cause of Action (Count VII). ................................................. 18

   II.  In the Alternative, this Case Should Be Stayed to Permit MDE to Complete its Investigation ..................................................................................................................... 18

Conclusion ........................................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alltel Tenn., Inc. v. Tenn. Pub. Serv. Comm'n,*
    913 F.2d 305 (6th Cir. 1990) ...................................................................................19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................................6

*Baltimore Gas & Elec. Co. v. Flippo*,
    112 Md. App. 75 (1996) ...........................................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................6

*Cavalier Tel., LLC v. Va. Elec. & Power Co.*,
    303 F.3d 316 (4th Cir. 2002) ...................................................................................19

*CDS Fam. Tr. v. Martin*,
    No. 1:15-CV-02584-JMC, 2020 WL 7319269 (D. Md. Dec. 10, 2020) ................................16

*Cofield v. Lead Indus. Ass'n, Inc.*,
    No. CIV.A. MJG-99-3277, 2000 WL 34292681 (D. Md. Aug. 17, 2000) ............................15

*Collington v. Maryland*,
    No. GJH-20-966, 2021 WL 3172275 (D. Md. July 26, 2021)................................................17

*Exxon Mobil Corp. v. Albright*,
    433 Md. 303 (2013) ..................................................................................................16

*Fare Deals, Ltd. v. World Choice Travel.com, Inc.*,
    180 F. Supp. 2d 678 (D. Md. 2001) .........................................................................18

*Gallagher v. H.V. Pierhomes, LLC*,
    182 Md. App. 94 (2008) ....................................................................................11, 12

*Glenn v. CSX Transp., Inc.*,
    No. RDB-14-802, 2014 WL 6065664 (D. Md. Nov. 12, 2014).......................................11, 12

*Hamilton v. Kirson*,
    439 Md. 501 (2014) ..................................................................................................13

*Haywood v. Caretta Mins., LLC*,
    No. 1:19-00264, 2020 WL 1520245 (S.D.W. Va. Mar. 30, 2020) .........................................7

*Jacques v. First Nat'l Bank of Maryland*,
    307 Md. 527 (1986) ................................................................................13

*Kirby v. Hilton*,
    51 Md. App. 365 (1982) ..........................................................................10

*Lafferty v. Sherwin-Williams Co.*,
    No. 1:17-06321-RBK/AMD, 2018 WL 3993448 (D.N.J. Aug. 21, 2018) .........................7, 9

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).................................................................................19

*Lohrmann v. Pittsburgh Corning Corp.*,
    782 F.2d 1156 (4th Cir. 1986) ..................................................................7

*Maryland v. Universal Elections, Inc.*,
    729 F.3d 370 (4th Cir. 2013) ....................................................................19

*McCullough v. Liberty Heights Health & Rehab. Ctr.*,
    830 F. Supp. 2d 94 (D. Md. 2011) ............................................................17

*Md. Dep't of the Env't v. Riverkeeper*,
    447 Md. 88 (2016) ...................................................................................20

*Mitchell v. Baltimore Sun Co.*,
    164 Md. App. 497 (2005) .........................................................................17

*Painter's Mill Grille, LLC v. Brown*,
    716 F.3d 342 (4th Cir. 2013) .....................................................................6

*Patton v. United States of Am. Rugby Football*,
    381 Md. 627 (2004) .................................................................................13

*Piney Run Pres. Ass'n v. County Comm'rs*,
    268 F.3d 255 (4th Cir. 2001) ....................................................................20

*Pittway Corp. v. Collins*,
    409 Md. 218 (2009) ..................................................................................7

*Read v. Corning Inc.*,
    351 F. Supp. 3d 342 (W.D.N.Y. 2018) .....................................................11

*Reiter v. Cooper*,
    507 U.S. 258 (1993).................................................................................19

*Rosenblatt v. Exxon Co.*,
    335 Md. 58 (1994) ....................................................................................7

*Ross v. Twenty-Four/Seven Bail Bonds, LLC*,
   471 F. Supp. 3d 673 (D. Md. 2020) ...........................................................................6

*Schuman v. Greenbelt Homes, Inc.*,
   212 Md. App. 451 (2013) .............................................................................15, 16

*Seiberlich v. Deossa*,
   No. CV TDC-23-0560, 2024 WL 343298 (D. Md. Jan. 30, 2024)...........................17

*Shahin v. United States*,
   No. 8:20-cv-03242-PX, 2021 WL 2949786 (D. Md. July 14, 2021).....................7, 9

*Simone v. VSL Pharms., Inc.*,
   No. TDC-15-1356, 2017 WL 66323 (D. Md. Jan. 5, 2017) ...................................18

*Soc'y Without a Name v. Virginia*,
   655 F.3d 342 (4th Cir. 2011) ....................................................................................6

*Springmeyer v. Marriott Int'l, Inc.*,
   No. 20-cv-867-PW, 2021 WL 809894 (D. Md. Mar. 3, 2021)............................9, 15

*Stewart v. T-Mobile USA, Inc.*,
   No. 4:14-CV-02086-PMD, 2014 WL 12614418 (D.S.C. Oct. 8, 2014).............19, 20

*Tadjer v. Montgomery Cnty.*,
   300 Md. 539 (1984) ................................................................................................15

*Taylor v. Fishkind*,
   207 Md. App. 121 (2012) .......................................................................................13

*Toms v. Calvary Assembly of God, Inc.*,
   446 Md. 543 (2016) ...........................................................................................9, 10

*Toy v. Atl. Gulf & Pac. Co.*,
   176 Md. 197 (1939) ............................................................................................7, 16

*Voelker v. Delmarva Power & Light Co.*,
   727 F. Supp. 991 (D. Md. 1989) ............................................................................12

**INTRODUCTION**

Plaintiffs have raced to this courthouse to file a Complaint before having gathered the facts necessary to articulate viable claims. What few facts Plaintiffs allege either defeat their claims or demonstrate that the Court should stay the case while the Maryland Department of the Environment ("MDE") continues to investigate the underlying circumstances, namely, the presence of certain per- and polyfluoroalkyl substances ("PFAS") in the groundwater below a Perdue AgriBusiness facility ("PAB") in Salisbury, Maryland. Plaintiffs filed their Complaint within days of Perdue AgriBusiness LLC sending a letter to nearby residents explaining its intent, at MDE's request, to sample the drinking water at homes within a prescribed radius of PAB. In their rush to file, Plaintiffs have resorted to speculation and conjecture, alleging that because PFAS have been found in the groundwater below PAB, those same PFAS must have migrated onto Plaintiffs' properties and into their drinking water, causing Plaintiffs' unspecified injuries.

In filing this motion to dismiss, Defendants do not seek to minimize concerns about PFAS at PAB, but Plaintiffs' haste has resulted in an abject failure to put forth the basic facts necessary to demonstrate injury and causation, elements of each claim they assert.[1] Plaintiffs fail to allege: (i) that any PFAS, let alone the same PFAS allegedly identified in the groundwater below PAB, has been identified in their drinking water; (ii) that the PFAS they assume is in their drinking water has caused them to suffer any definite health effects; or (iii) that the same alleged PFAS presumed to be in Plaintiffs' drinking water is directly tied to the conduct of any Defendant.

---

[1] The Complaint alleges seven counts, all of which should be dismissed: Strict liability and abnormally dangerous activity (Count I); Negligence (Count II); Private Nuisance (Count III); Public Nuisance (Count IV); Trespass (Count V); Vicarious Liability (Count VI); and "Preliminary And Permanent Injunction To Cease Pollution And Remediate The Environment" (Count VII). In addition to the substantiative failings of Counts I-V, Plaintiffs' claims for vicarious liability and injunctive relief fail because, as discussed *infra*, neither is an independent cause of action but rather a theory of assigning liability and a form of relief, respectively.

The Complaint's failings are not limited to injury and causation, however. The Complaint also lacks factual allegations: (i) that any abnormally dangerous activities are occurring at PAB or that the PFAS Plaintiffs claim to be on their properties originated from that activity; (ii) that Defendants knew or should have known of PFAS-contaminated groundwater below PAB and that the presence of such PFAS could foreseeably cause Plaintiffs' alleged harm; or (iii) that Plaintiffs have exhausted the administrative requirements of Maryland Code, Courts & Judicial Proceedings Section 5-403 prior to bringing a nuisance or trespass claim against an agricultural operation.

Plaintiffs' pleading deficiencies were avoidable. Plaintiffs had, and still have, a variety of resources available to them that would have allowed them to allege the missing critical facts (assuming such facts exist), including, of course, the ability to test their water to determine if PFAS are present. The other primary resource Plaintiffs have—but are choosing to bypass—is the ongoing MDE investigation. As Plaintiffs are aware, MDE is overseeing the current investigation to determine, among other things, the source of the PFAS found in the groundwater below PAB, the existence of PFAS in groundwater beyond PAB, and any alleged nexus between the two. This type of complex inquiry, which implicates science, technology, and policy, is exactly the scenario in which a court's deference to an agency's expertise would be proper. Deference here would be particularly appropriate because MDE is already involved, Defendants are collaboratively participating in the investigatory process, and Defendants have already begun remedial and preventative measures. Indeed, as part of Defendants' work with MDE, some of the named Plaintiffs' properties were found not to have detectable levels of PFAS in their well water.

Plaintiffs' rush to file should not be rewarded. The Complaint should be dismissed in its entirety because Plaintiffs have not pled viable claims under Maryland law. Alternatively, the case should be stayed to allow MDE to complete its investigation.

## COMPLAINT ALLEGATIONS AND ADDITIONAL BACKGROUND

Plaintiffs Rachael M. Chaney, Doug C. Davis, Julie M. Davis, Gary W. Doss, and Rebecca R. Doss allege they are residents of Salisbury, Maryland, living between 0.75 and 1.36 miles of PAB. (Compl. ¶¶ 1-5, 72-73, 79-80, 89-90.)  They contend that: (a) they use well water at their homes for a variety of purposes, including drinking, bathing, cooking, irrigation, hand washing, and teeth brushing; and (b) the water is drawn from "groundwater contaminated by Perdue." (Compl. ¶¶ 75, 82 and 94.)  Ms. Chaney and Mr. and Mrs. Davis further allege that they each suffer, and continue to suffer, "from a variety of health effects that are known to be caused by exposure to PFAS and other constituents discharged from Defendants'[2] operations," while all five Plaintiffs allege that "consumption of contaminated water has exposed [them] to increased risk of developing adverse health conditions, including cancer, which will require medical monitoring in the future."  (Compl. ¶¶ 76-77, 83-84, 86-87, 95 and 97.)

Plaintiffs do not allege the presence of any particular PFAS or "other constituents" in their water.  Nor do they identify the specific health effects to which they allegedly suffer or to which they are at an allegedly increased risk of developing.  Although they allege that PFAS "are a large group of over four thousand (4,000) chemical compounds," the only PFAS they allege were identified in the wastewater or groundwater at PAB are perfluorooctane sulfonic acid ("PFOS"), perfluorooctanoic acid ("PFOA"), and perfluorohexane sulfonic acid ("PFHxS").  (Compl. ¶¶ 28, 60-61.)  Plaintiffs do not allege that any other "PFAS" or "other constituents" were identified in the wastewater or groundwater at PAB.

---

[2] The allegations rarely differentiate between Defendants.  To avoid excessive or superfluous clarification, except when describing correspondence, Defendants adopt Plaintiffs' conventions for the purposes of this memorandum only and without admitting that any allegations are correct as to all (or any) Defendants.

As it relates to MDE's investigation of PFAS at PAB, Plaintiffs allege that MDE discovered PFAS in the wastewater at PAB in September 2023. (Compl. ¶ 60.) Plaintiffs further allege that MDE discovered PFAS in the groundwater at PAB in January 2024. (Compl. ¶ 61.) On September 12, 2024, MDE requested that Perdue AgriBusiness "take immediate action to investigate the nature and extent of PFAS contamination in the wells serving the surrounding residential communities" and to do so "according to an MDE-approved plan." *See* Exhibit A. Such a plan was subsequently reached with MDE. In accordance with that plan, Perdue AgriBusiness promptly sent a letter dated September 30, 2024, to residents within an MDE-prescribed area detailing the plan to sample private well water at those residents' homes for certain PFAS. *See* Exhibit B.[3] In that same letter, Perdue AgriBusiness offered to provide all residents in the defined area with bottled water. *Id.* Early results from that initial sampling led MDE and Defendants to expand the testing zone to a discrete area west of PAB. *See* Exhibit C. Notification letters to property owners within the expanded area were sent on November 5, 2024. *See id.* As it did with those residents in the initial testing area, Perdue AgriBusiness offered to provide all residents in the expanded area with bottled water. *Id.* Around this same time, and again at MDE's direction, Perdue AgriBusiness began installing point-of-entry treatment ("POET") systems at homes within the testing area to treat well water with levels of certain PFAS above EPA limits for drinking water. *See* Exhibit D.

Letters with the results of the well testing for their respective properties were sent to Ms. Chaney and Mr. and Mrs. Doss on November 8, 2024; November 22, 2024; and December 9,

---

[3] Plaintiffs refer to such a letter as an exhibit to the Complaint (Compl. ¶ 67), but no exhibits are attached to the Complaint.

2024.  *See* Exhibits E,[4] G, and H.  The only well water with PFAS levels exceeding the EPA's standards for public drinking water was at the 30785 Hambrook Court property co-owned by Ms. Chaney.  Exhibit E.  As such, the letter explained that Perdue AgriBusiness would provide, at no cost, a POET system and bottled drinking water.  Exhibit E, at 1-2.  The well water at Ms. Chaney's property at 506 Barnsdale Drive did not contain any PFAS exceeding the EPA's standards for public drinking water.  Exhibit G.  The well water at Mr. and Mrs. Doss's property at 812 Friar Tuck Lane had no detectable levels of the six regulated PFAS.  Exhibit H.

On December 19, 2024, Perdue AgriBusiness sent a letter to community members with updates to the testing and treatment process, as well as additional informational resources.  *See* Exhibit I.  The letter noted that Perdue AgriBusiness has "validated test results back from over 95% of homes that have requested testing" and "installed 158 filtration systems, which are designed to remove PFAS from drinking water. That represents 48% of the properties with elevated levels of PFAS."  *Id.* at 1.  On December 20, 2024, MDE sent Perdue AgriBusiness a letter summarizing and commenting on the status of the investigation, including Perdue AgriBusiness's "commitment to addressing concerns related to [PFAS]."  Exhibit J, at 1.  In the letter, MDE "requests that [within 30 days of receipt of the letter] Perdue [AgriBusiness] provide a report to [MDE's Controlled Hazardous Substance Enforcement Division] that is equivalent to a Phase I Environmental Site Assessment ("ESA") to determine all potential sources of PFAS in soil and groundwater at [PAB]."  *Id.* at 2-3.  Per the MDE, the ESA will be used to analyze remediation options for PAB and the surrounding area.  *Id.*  As MDE's letter indicates, Perdue AgriBusiness intends to comply with the procedures MDE requests.  *Id.* at 3.  The letter also notes that the

---

[4] Ms. Chaney has been the point of contact for the property at 30785 Hambrook Court, Salsbury Maryland, for which property records indicate she is a co-owner.  *See* Exhibit F.

investigation as to the source of the PFAS and the scope of the effects would continue while MDE and Perdue AgriBusiness develop feasible and suitable remediation options. *See id.* at 2-3.

## LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). However, "the rule demands more than bald accusations or mere speculation." *Ross v. Twenty-Four/Seven Bail Bonds, LLC*, 471 F. Supp. 3d 673, 677 (D. Md. 2020). "It is now well established that mere conclusory and speculative allegations are not sufficient to withstand a motion to dismiss." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

## ARGUMENT

### I.    Plaintiffs Fail to Plead Any Viable Causes of Action.

The Complaint alleges seven counts: Strict liability and abnormally dangerous activity (Count I); Negligence (Count II); Private Nuisance (Count III); Public Nuisance (Count IV); Trespass (Count V); Vicarious Liability (Count VI); and "Preliminary And Permanent Injunction To Cease Pollution And Remediate The Environment" (Count VII). All claims should be dismissed. First, Plaintiffs have not pled the requisite causation, which is fatal to all Plaintiffs' claims. Second, Plaintiffs' pleading is deficient in various respects as to each individual claim.

### A.  Plaintiffs' Failure to Plausibly Plead Causation Based on Exposure to PFAS from Defendants' Conduct Requires Dismissal of Counts I-V.

Causation is an essential element of each of Plaintiffs' substantive claims.  *See, e.g.*, *Pittway Corp. v. Collins*, 409 Md. 218, 255 n.17 (2009) (strict liability and negligence claims); *Toy v. Atl. Gulf & Pac. Co.*, 176 Md. 197, 215 (1939) (nuisance); *Rosenblatt v. Exxon Co.*, 335 Md. 58, 78 (1994) (trespass).  Causation requires connection.  In other words, Plaintiffs must allege sufficient facts that connect the specific substances in their drinking water with the specific injuries they allegedly developed, and the specific substances they associate with PAB.  *See, e.g.*, *Shahin v. United States*, No. 8:20-cv-03242-PX, 2021 WL 2949786, at *6 (D. Md. July 14, 2021) ("[T]he Complaint fails to include facts that make plausible any connection between Mrs. Shahin's exposure to unnamed 'solvents' and Shahin Shahin's illnesses. . . . Mere correlation does not equal causation."); *Haywood v. Caretta Mins., LLC*, No. 1:19-00264, 2020 WL 1520245, at *3 (S.D.W. Va. Mar. 30, 2020) (dismissing claims where plaintiffs failed to plead any facts to support a causal nexus between defendants' alleged activities and plaintiffs' stated injuries); *Lafferty v. Sherwin-Williams Co.*, No. 1:17-06321-RBK/AMD, 2018 WL 3993448, at *4 (D.N.J. Aug. 21, 2018) (explaining that "[s]weeping allegations of 'serious latent disease' do not, however, properly put a defendant on notice of what the claim is or the grounds on which it rests" and noting that the plaintiffs had failed to, *inter alia*, "identify specific substances to which Plaintiffs were *actually* exposed, at what levels Plaintiffs were actually exposed, which diseases Plaintiffs are at an increased risk of developing, [and] what the potential risks are . . . ." (citing *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, No. 12-6542, 2013 WL 5655480, at *3 (E.D. Pa. Oct. 17, 2013))); *see also Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986) (causation in asbestos cases requires evidence of exposure to a specific product on a regular basis).  Plaintiffs have failed to allege the facts requisite to any such connections.

For instance, Plaintiffs fail to set forth any facts that "PFAS and other constituents" were actually present in their drinking water, opting instead to speculate that the groundwater below PAB has reached their homes and that the levels of PFAS in that groundwater have been, are, or "will in the future" exceed "safe levels." (Compl. ¶¶ 63-66.) Simply put, Plaintiffs did not know if any "PFAS and other constituents" were in their water when they filed their lawsuit. Wholly speculative statements of this nature cannot form the basis of a plausible claim.

Plaintiffs' Complaint is also rife with broad allegations about "PFAS chemicals," "PFAS and other constituents," and "multiple PFAS compounds." (Compl. ¶¶ 66, 76, 83, 86, 144, 147, 148, 166.) As Plaintiffs allege, however, PFAS "are a large group of over four thousand (4,000) chemical compounds," only a few of which they have alleged are associated with PAB. (Compl. ¶¶ 28, 60-61.) Unless and until Plaintiffs can plead facts supporting both the presence of specific PFAS and "other constituents" in their drinking water *and* an alleged nexus between PAB and those particular PFAS and "other constituents," their sweeping allegations should be dismissed. As of now, the only PFAS Plaintiffs currently associate with PAB are PFOA, PFOS, and PFHxS, but Plaintiffs do not allege even those PFAS were actually present in their drinking water.

Similarly, while Plaintiffs allege that PFOA, PFOS, and PFHxS are associated with several specific health effects, Plaintiffs fail to identify the specific health effects, if any, they allegedly developed from exposure to those three PFAS. (Compl. ¶¶ 36-39.) For example, Ms. Chaney and Mr. and Mrs. Davis only vaguely assert that they have suffered and continue to suffer "from a variety of health effects that are known to be caused by exposure to PFAS and other constituents discharged from Defendants' operations." (Compl. ¶¶ 76, 83, 86.) Mr. and Mrs. Doss, in turn, do not allege any present injury, but rather, only an increased risk of developing unknown "adverse health conditions, including cancer," allegations which Ms. Chaney and Mr. and Mrs. Davis repeat

verbatim.  (Compl. ¶¶ 77, 84, 87, 95, 97.)  Broad sweeping allegations of unidentified health effects or risk of developing some unknown health condition are insufficient to support any claim against Defendants.  *See Shahin*, 2021 WL 2949786, at *6; *Lafferty*, 2018 WL 3993448, at *4.

Finally, Plaintiffs have failed to identify a causal connection between an alleged act or omission of any Defendant and Plaintiffs' alleged (but unspecified) injuries.  While Plaintiffs plead generalized allegations about PAB and certain PFAS detected in PAB's wastewater and groundwater, Plaintiffs do not plead plausible facts that their specific drinking water was contaminated with any of the PFAS that Plaintiffs associate with PAB.  As Plaintiffs have failed to support any causation proposition with well-pleaded allegations, their strict liability, negligence, private nuisance, public nuisance, and trespass claims should be dismissed.

### B.  Plaintiffs' Pleading Is Deficient as to Each Individual Claim.

#### 1.  Plaintiffs Have Failed to Plead Harm Stemming from an Abnormally Dangerous Activity (Count I).

Under Maryland law, a claim for "strict liability for an abnormally dangerous activity" must show "harm to the person or property of another resulting from the abnormally dangerous activity."  *Toms v. Calvary Assembly of God, Inc.*, 446 Md. 543, 552 (2016) (citation omitted).  "[T]he doctrine of strict liability for abnormally dangerous activities is narrowly applied in order to avoid imposing 'grievous burdens' on landowners and occupiers of land."  *Id.* at 569 (citation omitted).  Plaintiffs' strict liability claim (Count I) fails to meet any of the elements of this narrow standard.

At best, Plaintiffs' strict liability allegations (*see* Compl. ¶¶ 118-123) are simply a "formulaic recitation of [the] cause of action" and "naked assertions devoid of further factual enhancement."  *Springmeyer v. Marriott Int'l, Inc.*, No. 20-cv-867-PW, 2021 WL 809894, at *2 (D. Md. Mar. 3, 2021) (citation omitted).  They merely contend that because PFAS have been

identified in the groundwater at PAB, Defendants' "manufacturing processes" and "handling of PFAS" must have been "abnormally dangerous activities." (Compl. ¶ 120.) Plaintiffs provide no additional, particularized facts that would support this contention. There are none. Simply put, the presence of PFAS in groundwater is not the *ipso facto* result of an abnormally dangerous activity.

Even assuming Count I alleged more than the formulaic elements of the claim, Plaintiffs' strict liability claim fails because Plaintiffs have not alleged harm from an abnormally dangerous activity. To determine whether an activity is "abnormally dangerous," Maryland courts examine the six factors enumerated in Section 520 of the Restatement (Second) of Torts. *Toms*, 446 Md. at 552-53. These factors are:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Id.* Each factor is weighed independently but "[m]ore emphasis is placed on the fifth factor: the appropriateness of the activity in relation to its location." *Id.* at 553.

The fifth, most critical factor favors the Defendants. PAB's operation on 250 acres of real property in northeast Salisbury that for over fifty years has included a feed mill, soybean extraction plant, oilseed refinery, hatchery, and grain storage facility is not "inappropriate" to the surroundings. *See, e.g.*, *Kirby v. Hilton*, 51 Md. App. 365, 375 (1982) (holding that storage of a pipe to improve a residential water and sewage system was neither uncommon nor inappropriate to the place where it occurred); (Compl. ¶ 56 ("Defendants . . . operate approximately 250 acres of real property at 6906 Zion Church Road, northeast of Salisbury, Maryland, on which they have constructed and operate a large industrial complex for grain storage, a feed mill, soybean extraction

10

plant, an oilseeds refinery, hatcheries, and marigold greenhouses. This facility is comprised of a series of contiguous parcels of land[.]"); Compl. ¶ 57 ("On information and belief, since 1968, this facility has been operated by Perdue Farms or one of its subsidiaries: Perdue Foods and Perdue Agribusiness LLC."); Compl. Figure 1 (illustrating agricultural nature of site)). Nor do Plaintiffs allege as much. There is simply no authority to support Plaintiffs' assertions that engaging in agricultural activities in an agricultural area is an "abnormally dangerous" activity, and expanding the narrow doctrine to expose agricultural companies to strict liability would be unprecedented and contrary to the policy underpinnings of the doctrine.

The remaining factors either favor the Defendants or are inapplicable. Plaintiffs have failed to plead what, if any, "high degree of risk" or "harm that results from the risk" will occur. Plaintiffs do not allege that any manufacturing processes at PAB were "likely to produce significant harm," but only that Plaintiffs "suffered some harm as a result of the . . . activity." That is insufficient. *See Gallagher v. H.V. Pierhomes, LLC*, 182 Md. App. 94, 110 (2008); *see also Glenn v. CSX Transp., Inc.*, No. RDB-14-802, 2014 WL 6065664, at *7 (D. Md. Nov. 12, 2014) ("[T]he drafters of the Restatement made clear that the activity must . . . [be] sufficiently serious in its possible consequences to justify holding the defendant strictly liable for subjecting others to an unusual risk." (citation omitted)); *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 358 (W.D.N.Y. 2018) (finding that the disposal of ordinary materials that just happen to contain hazardous chemicals "is not so inherently dangerous as to give rise to strict liability"). Because Plaintiffs have not pled what risks are likely to result, there is no way to know whether the risk could have been eliminated through reasonable care.

It is similarly impossible to determine whether the activity vaguely referenced in the Complaint is a matter of "common usage" because Plaintiffs have not specified the activity.

Notably, however, soybeans are one of Maryland's leading products, and agriculture is Maryland's largest industry.[5]  *See, e.g.*, *Voelker v. Delmarva Power & Light Co.*, 727 F. Supp. 991, 994 (D. Md. 1989) (explaining that the transmission of electricity is a daily occurrence in every community in the United States and as such, it was a matter of common usage); *Glenn*,  2014 WL 6065664, at *7 (finding operating railroads is a matter of common usage because "an activity is common usage 'if it is customarily carried on by the great mass of mankind,' and '[c]ertain activities, notwithstanding their recognizable danger, are so generally carried on as to be regarded as customary.'" (citation omitted)).   This business, through PAB, brings significant value to Maryland.   Indeed, Defendants employ 1,500 Maryland residents and contribute over $1 billion dollars annually to the Maryland economy.[6]  Thus, the final factor also favors the Defendants.

Because Plaintiffs have failed to plead an abnormally dangerous activity, it follows they have also failed to plead any harm stemming from an abnormally dangerous activity.   But even the harm pled is insufficient to constitute legally addressable harm from an abnormally dangerous activity.   "The harm threatened [by an abnormally dangerous activity] must be major in degree, and sufficiently serious in its possible consequence to justify holding the defendant strictly liable for subjecting others to an unusual risk."  *Gallagher*, 182 Md. App. at 110 (finding damage to a historic home caused by pile driving to be insufficient harm to support a finding that an activity is abnormally dangerous).   Here, Plaintiffs have merely alleged the potential for a litany of harms that fully overlap with the harms allegedly stemming from other torts.   Because the Complaint

---

[5] *Agriculture*, Maryland at a Glance, Md. Manual On-line,
https://msa.maryland.gov/msa/mdmanual/01glance/html/agri.html (Oct. 23, 2024).
[6] *AgriBusiness*, Md. Dept. Commerce,
https://commerce.maryland.gov/Documents/ResearchDocument/MarylandAgribusinessIndustryFactSheet.pdf (last visited November 15, 2024).

fails to allege any of the required elements beyond rote recitation of the legal standard, Count I should be dismissed.

> ### 2. Plaintiffs Do Not Plausibly Allege that Defendants Negligently Ignored Foreseeable Harms (Count II).

Under Maryland law, "[t]o state a claim for negligence a party must show 1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Hamilton v. Kirson*, 439 Md. 501, 523-24 (2014) (quotation marks omitted) (quoting *Taylor v. Fishkind*, 207 Md. App. 121, 148 (2012)).

As discussed above, Plaintiffs not only fail to allege sufficient facts to render their allegations of injury or proximate causation plausible, but they also fail to allege that Defendants were under a duty to protect Plaintiffs from the alleged injuries. "Where the failure to exercise due care creates risks of personal injury, 'the principal determinant of duty becomes foreseeability.'" *Patton v. United States of Am. Rugby Football*, 381 Md. 627, 637 (2004) (quoting *Jacques v. First Nat'l Bank of Maryland*, 307 Md. 527, 535 (1986)). The facts alleged in the Complaint are insufficient to demonstrate that Plaintiffs' alleged injuries were foreseeable to the Defendants.

At no point do Plaintiffs allege the existence of any guidance or information that would have imposed a standard of care on any of the Defendants to test the wastewater or groundwater at PAB for PFAS (of any kind). Nor do they allege, beyond formulaic phrasing and "information and belief," that, prior to their communications with MDE, Defendants knew or had any reason to know that the groundwater under PAB had elevated levels of PFAS. And at no point do Plaintiffs allege, beyond formulaic phrasing and "information and belief," that Defendants knew or had reason to know that groundwater with elevated levels of PFAS could, as Plaintiffs claim, migrate

to Plaintiffs' properties.  When all the conclusory language is discarded, what comes into sharp relief is that Plaintiffs seek to hold the Defendants responsible for the presence of PFAS in the groundwater below PAB but have failed to allege any facts to support the finding of foreseeability required to create a duty under Maryland law.

### 3. Plaintiffs Cannot Pursue a Private or Public Nuisance Claim Against Defendants in Federal Court in the First Instance (Counts III and IV).

In Plaintiffs' rush to litigate their nuisance claims, they bypassed the prerequisites set forth in Maryland and Wicomico County's right-to-farm statutes.  Under those laws, Plaintiffs cannot bring in any court a nuisance action against an agricultural operation,[7] like PAB, until they have "filed a complaint with a local agency," and "the local agency has made a decision or recommendation on the complaint."  Md. Code Ann., Cts. & Jud. Proc. § 5-403(e).  Additionally, in Wicomico County, "no action alleging that [an] agricultural operation has interfered with the reasonable use or enjoyment of real property or personal well-being shall be maintained if the plaintiff has not sought and obtained a final judgment of the Agricultural Reconciliation Committee."  Wicomico Cnty. § 186-4(B).  These are the precise allegations Plaintiffs made (Compl. ¶¶ 152, 162), but Plaintiffs have failed to satisfy these statutory conditions.  Accordingly, Plaintiffs' private and public nuisance claims must be dismissed.

Even if Plaintiffs could bring their nuisance claims at this juncture, which they cannot, Plaintiffs' public nuisance claim still fails.  Conduct does not become a public nuisance merely because Plaintiffs allege that "it interferes with the use and enjoyment of land by a large number

---

[7] "'Agricultural operation' means an operation for the processing of agricultural crops . . . ."  Md. Code Ann., Cts. & Jud. Proc. § 5-403(c).  Plaintiffs allege that "Defendants Perdue Farms, Perdue AgriBusiness, and Perdue Foods own and operate approximately 250 acres of real property at 6906 Zion Church Road, northeast of Salisbury, Maryland, on which they have constructed and operate a large industrial complex for grain storage, a feed mill, soybean extraction plant, an oilseeds refinery, hatcheries, and marigold greenhouses."  (Compl. ¶ 56.)

of persons." *Cofield v. Lead Indus. Ass'n, Inc.*, No. CIV.A. MJG-99-3277, 2000 WL 34292681, at *7 (D. Md. Aug. 17, 2000). Plaintiffs must demonstrate interference with a public right that is common to all members of the general public, and show that they have suffered "special and particular damage, different not merely in degree, but different in kind from that experienced in common with other citizens." *Id.* (citations omitted) (dismissing claims for public nuisance based on the presence of lead paint in homes because "[t]he injury alleged by the plaintiffs in the case at Bar is not common to all members of the general public, but rather, as plead, affects only those persons who own or occupy property which contains lead paint" and there was "no allegation that any of the named Plaintiffs, let alone any member of the putative class, suffer[] from damages which are different in kind from any other individual who is affected by the presence of lead paint in owner-occupied housing in the state of Maryland"); *Tadjer v. Montgomery Cnty.*, 300 Md. 539, 553 (1984) ("[T]he pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance." (quoting Restatement (Second) of Torts § 821D, cmt. g. (1979)). The alleged interference here is not a public right common to all members of the general public; on the contrary, Plaintiffs have provided a map of a specific area alleged to be affected and claim to be part of a particular "class" of individuals allegedly harmed. (*See, e.g.*, Compl. ¶ 102.)

### 4.  *Plaintiffs Do Not Plausibly Allege a Claim for Trespass (Count V).*

Trespass is an "intentional or negligent intrusion upon, or to, the possessory interest in the property of another." *Schuman v. Greenbelt Homes, Inc.*, 212 Md. App. 451, 475 (2013) (citation omitted). With this standard in mind, it becomes clear that once again, Plaintiffs' allegations merely constitute a "formulaic recitation of [the] cause of action" without the necessary factual support. *Springmeyer*, 2021 WL 809894, at *2; (*see, e.g.*, Compl. ¶ 173 ("Defendants' negligent, reckless, and/or intentional conduct . . . continues to interfere with Plaintiff's and Class Members'

use, possession, and enjoyment of their real properties")).  These vague and unsupported assertions cannot withstand a motion to dismiss.

"Traditionally, courts held that a defendant's act must cause an invasion of the plaintiff's property by some tangible matter."  *Schuman*, 212 Md. App. at 475 (citation omitted); *see also Toy*, 176 Md. at 205-06 (noting that because the premises of the plaintiffs was not physically invaded, an action in trespass cannot lie).  Here, as part of their trespass count, Plaintiffs have alleged that "Defendants had connections with and control over the release of PFAS into the air and water."  (Compl. ¶ 170.)  To the extent Plaintiffs are attempting to allege trespass because PFAS was released "into the air," these allegations fail.  Intangible intrusions like "smoke, odor, light and noise are not typically actionable under a trespass theory."  *Schuman*, 212 Md. App. at 475.

Even as to PFAS alleged to have been present in the groundwater at PAB, each Plaintiff fails to allege a tangible intrusion, because none have alleged any plausible facts that PFAS is actually present on their respective property.  (*See* Compl. ¶ 65 ("[T]he PFOS level in groundwater at Defendants' Facility that is *migrating towards* Plaintiffs' and class members' wells exceed the EPA's safe drinking water standard"); *id.* ¶ 66 ("[T]he safe levels for multiple PFAS compounds, including PFOS and PFHxS, *have been, are presently or will* in the future be exceeded in Plaintiffs' and class members' wells) (emphasis added).)  Without factual allegations of actual, tangible intrusion, the trespass claim fails.  *See Exxon Mobil Corp. v. Albright*, 433 Md. 303, 408 (2013) ("General contamination of an aquifer that may or may not reach a given Appellee's property at an undetermined point in the future is not sufficient to prove invasion of property.").

Finally, Plaintiffs "must establish that the defendant consciously intended to do the 'act that constitutes entry upon' another's property."  *CDS Fam. Tr. v. Martin*, No. 1:15-CV-02584-

JMC, 2020 WL 7319269, at *4 (D. Md. Dec. 10, 2020) (quoting *Mitchell v. Baltimore Sun Co.*, 164 Md. App. 497, 508 (2005)).  In Maryland, non-intentional and non-negligent trespass is rarely actionable.  *See* Paul Mark Sandler, Esq., James K. Archibald, Esq., and Eleanor T. Chung, Esq., *Pleading Causes of Action in Maryland* § 3.11 (6th Ed. 2018); *see also Baltimore Gas & Elec. Co. v. Flippo*, 112 Md. App. 75, 85 (1996) (citing cases), *aff'd*, 348 Md. 680 (1998).  "The plaintiff need not demonstrate that the defendant's intrusion was committed with tortious intent, but must establish that the defendant consciously intended to do the 'act that constitutes entry upon [the plaintiff's] real or personal property.'"  *Mitchell*, 164 Md. App. at 508 (citation omitted).  Thus, Plaintiffs must allege Defendants intended for the specific PFAS to migrate to their property (or negligently caused migration to occur),[8] and their broad claim that the Defendants are liable for trespass due to "connections with . . . the release of PFAS" is insufficient as a matter of law. (*See* Compl. ¶ 170.)

       *5.  Plaintiffs' Claim for Vicarious Liability is Duplicative (Count VI).*

Plaintiffs' vicarious liability claim (Count VI) merits dismissal because vicarious liability is a theory of assigning liability, not an independent cause of action.  *See, e.g.*, *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 97 (D. Md. 2011); *Collington v. Maryland*, No. GJH-20-966, 2021 WL 3172275, at *17 (D. Md. July 26, 2021).  Further, Plaintiffs' Complaint does not distinguish between the conduct of any of the Perdue entities and refers to "Defendants" generally or to the "Perdue Defendants."  (*See* Compl. at 1 (grouping defendants collectively as "Perdue" or "Defendants").)  Because there is no attempt to distinguish among the entities named in the Complaint and Counts I through V are brought against all Defendants, a vicarious liability claim is duplicative.  *See Seiberlich v. Deossa*, No. CV TDC-23-0560, 2024 WL

---

[8] As discussed above, Plaintiffs' allegations that Defendants acted negligently fail as a matter of law.

343298, at *5 (D. Md. Jan. 30, 2024) ("The Court therefore finds that where [the plaintiff] has already asserted negligence claims against the [defendants against whom the vicarious liability claim is alleged], it is not necessary, and in fact duplicative, to have asserted the separate respondeat superior/vicarious liability claims.").

> 6.  *Plaintiffs' Request for a Preliminary and Permanent Injunction is a Remedy, Not an Independent Cause of Action (Count VII).*

Plaintiffs' claim for a "Preliminary and Permanent Injunction to Cease Pollution and Remediate the Environment" (Count VII) merits dismissal because injunctive relief "does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in . . . the substantive counts." *Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2017 WL 66323, at *10 (D. Md. Jan. 5, 2017) (citing *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001)).  Because Plaintiffs' request for relief also seeks an injunction (*see* Compl. ¶¶ 193, 194), this redundant remedy cast as a claim should be dismissed.

## II.    In the Alternative, this Case Should Be Stayed to Permit MDE to Complete its Investigation.

All of Plaintiffs' claims should be dismissed for being factually or legally deficient, but to the extent the Court does not dismiss all claims, the case should be stayed to allow MDE to complete its investigation, which is progressing apace and seeks to address critical issues such as the source of the PFAS found in the groundwater at PAB and the extent it may have migrated beyond PAB.  *See* Exhibit J.  A stay is particularly appropriate here because in the short time since the case has been filed, MDE and Perdue AgriBusiness's investigation has already revealed facts pertinent to the suit: one of Ms. Chaney's properties does not have PFAS levels in excess of the EPA's standards for public drinking water and the well water at Mr. and Mrs. Doss's property has

no detectable levels of the six regulated PFAS.  *See* Exhibits G and H. [9]  Perdue AgriBusiness is also taking measurable, effective steps to assist those in the community whose well water does contain levels of PFAS in excess of the standards, as well as steps designed to prevent additional PFAS discharges while the identification of the source is investigated.  *See, e.g.*, Exhibits I and J.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).  A stay is appropriate when an issue "involves technical questions of fact and policy bound up with an assessment of industry standards or practices."  *Stewart v. T-Mobile USA, Inc.*, No. 4:14-CV-02086-PMD, 2014 WL 12614418, at *3 (D.S.C. Oct. 8, 2014).  Under the doctrine of primary jurisdiction, a court may find that such questions are best answered by an administrative agency acting within its purview.

"The doctrine of primary jurisdiction 'is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency.'"  *Id.* at *2 (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)).  "The principal reasons for the doctrine of primary jurisdiction are to obtain the benefit of the expertise and experience of the administrative agencies and the desirable uniformity which occurs when a specialized agency decides certain administrative questions."  *Cavalier Tel., LLC v. Va. Elec. & Power Co.*, 303 F.3d 316, 322 n.10 (4th Cir. 2002) (quoting *Alltel Tenn., Inc. v. Tenn. Pub. Serv. Comm'n*, 913 F.2d 305, 309 (6th Cir. 1990)).

---

[9] Had Plaintiffs tested their water prior to filing, this scenario could have been avoided, and it demonstrates why Plaintiffs' rush, if not curtailed, will result in wasted time and resources.

Courts have developed a four-factor test to determine whether to stay a case under the primary jurisdiction doctrine:

> (1) whether the question at issue is within the conventional experience of judges or it is within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

*Stewart*, 2014 WL 12614418, at *2-3 (citing cases). This case implicates all four factors.

The primary issues in this case concern the discharge of a substance into groundwater, precisely MDE's area of expertise. MDE has been actively working with Perdue AgriBusiness throughout the process of identifying the elevated PFAS levels in the groundwater at PAB, investigating the potential sources and scope, communicating with the community, and providing resources like bottled water and POET systems. *See generally* Exhibits A and J. MDE has already defined its procedures for developing a remediation program, which includes the drafting of a report "that is equivalent to a Phase I Environmental Site Assessment," and the development of a "Conceptual Site Model" and "Feasibility Study." *See* Exhibit J at 2. As MDE noted in the December 20, 2024 correspondence, Perdue AgriBusiness has been committed to working with MDE to address the concerns related to PFAS at PAB and intends to comply with the procedures MDE has designed. *Id.* at 3.

MDE is also charged with approving discharges of pollutants and other substances into groundwater and setting the permissible amount of those discharges, a responsibility it is actively fulfilling in this case. *See Piney Run Pres. Ass'n v. County Comm'rs*, 268 F.3d 255, 266 (4th Cir. 2001); *Md. Dep't of the Env't v. Riverkeeper*, 447 Md. 88, 96 (2016); *see* Exhibit J, at 2-3 (describing how MDE intends to consider, among other interrelated factors, PFAS levels in current permitting issues at PAB, while also describing the work being done to identify the source of the

PFAS and extent of migration). There also exists a substantial danger that this Court may rule in a way that is inconsistent with MDE's eventual determination, namely, as to the source and scope of any alleged PFAS contamination. Finally, the fourth factor favors a stay because MDE is already investigating the allegations Plaintiffs have made, as Plaintiffs themselves allege in their Complaint and as their counsel have publicly acknowledged.[10] Moreover, if not more importantly, a program is already in place to install POET systems at any homes, including those of the Plaintiffs, within the current area of investigation that will treat water containing elevated levels of PFAS that the EPA regulates in public drinking water.

## **CONCLUSION**

For the reasons outlined herein, Plaintiffs' premature Complaint should be dismissed in its entirety. Alternatively or additionally, this Court should stay any surviving claims for the duration of MDE's investigation. A proposed order to this effect is appended to the instant Motion.

/s/
Venable LLP
Michael B. MacWilliams
(Federal Bar No. 23442)
Elizabeth C. Rinehart
(Federal Bar No. 19638)
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400 (phone)
(410) 244-7742 (fax)
mbmacwilliams@venable.com
lcrinehart@venable.com

J. Douglas Baldridge
(Federal Bar No. 11023)
600 Massachusetts Avenue, N.W.
Washington, DC 20001
(202) 344-4703 (phone)
(202) 344-8300 (fax)
jbaldridge@venable.com

---

[10] *See generally Perdue PFAS Contamination,* Baird, Mandalas, Brockstedt, & Federico, https://perduepollution.com/ (last visited December 14, 2024).

Derek C. Smith
(*pro hac vice* application pending)
227 West Monroe Street, Suite 1900
Chicago, IL 60606
(312) 210-1521 (phone)
(312) 820-3401 (fax)
dcsmith@venable.com

*Counsel for Defendants*