IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **RACHEL M. CHANEY**, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Case No.: SAG-24-02975 |
| v. | * | |
| | * | |
| **PERDUE FARMS INC.**, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Five individual plaintiffs, on behalf of a putative class, filed this lawsuit against Perdue Farms Inc., FPP Business Services Inc. d/b/a Perdue Farms Inc., Perdue Agribusiness LLC, Perdue Agribusiness Incorporated d/b/a Perdue Agribusiness LLC, Perdue Agribusiness Grain LLC d/b/a Perdue Agribusiness LLC, Perdue Foods LLC, and Perdue Foods Incorporated d/b/a Perdue Foods LLC (collectively "Perdue"), alleging that Perdue disseminated hazardous chemicals into the environment, causing harm to Plaintiffs and the putative class. ECF 1. Perdue has filed a motion to dismiss the Complaint or, in the alternative, to stay the lawsuit pending an ongoing investigation by the Maryland Department of the Environment ("MDE"). ECF 23. Plaintiffs opposed the motion, ECF 33, and Perdue filed a reply, ECF 36. Perdue also submitted some additional information relating to the MDE investigation, ECF 37, 41. Plaintiffs filed a motion for leave to file a surreply in opposition to Defendants' motion to dismiss or stay. ECF 42. Although Plaintiffs have requested a hearing on the motion to dismiss or stay, ECF 38, this Court has reviewed the filings and has determined that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, Perdue's motion to stay will be denied and its motion to dismiss will be granted in part and denied in part. Plaintiffs' motion for leave to file a surreply will be denied as moot.

I.  **BACKGROUND**

The following facts are derived from the Complaint, ECF 1, and are taken as true for purposes of this motion. Plaintiffs Rachel M. Chaney, Doug C. Davis, Julie M. Davis, Gary W. Doss, and Rebecca R. Doss reside in Salisbury, Maryland in Wicomico County. *Id.* ¶¶ 1-5. Perdue owns and operates an industrial property ("the Agribusiness Facility") on more than 250 acres in Salisbury. *Id.* ¶ 17. At that facility, Perdue uses the facility for grain storage, a feed mill, a soybean extraction plant, an oilseeds refinery, hatcheries, and marigold greenhouses. *Id.* ¶ 56. The facility generates approximately 175,000 gallons of wastewater per day. *Id.* ¶ 58. The wastewater is treated and then discharged to "the adjacent Peggy's Branch" stream, spray irrigated on-site, or stored for subsequent use. *Id.* Those disposal methods have been ongoing for at least 20 years. *Id.* ¶ 67. The Agribusiness Facility overlies a shallow aquifer, the Salisbury Aquifer, that is susceptible to contamination from wastewater and other wastes from the Agribusiness Facility. *Id.* ¶ 62. Groundwater in the Salisbury Aquifer, near the Agribusiness facility, moves to the west and southwest towards homes with shallow private wells. *Id.* ¶ 63. Some of those homes are less than 1000 feet from the Agribusiness Facility's wastewater spray irrigation field. *Id.*

Per- and polyfluoroalkyl substances ("PFAS") are a group of over four thousand chemical compounds, including perfluorooctane sulfonic acid ("PFOS"), perfluorohexane sulfonic acid ("PFHxS"), and perfluorooctanoic acid ("PFOA"). *Id.* ¶ 28. Commonly called "forever chemicals," PFAS are resistant to environmental degradation, meaning they remain present in the environment long after release. *Id.* ¶ 29. PFAS also bioaccumulate in living organisms, including humans. *Id.* ¶ 30. PFOA and PFOS are highly carcinogenic and toxic to humans. *Id.* ¶ 31. PFHxS is "associated with liver function disruptions, thyroid and hormone level changes, developmental effects, decreased antibody response, and memory impairment." *Id.* ¶ 39. When PFOA and PFOS

are released into the environment, they are particularly persistent in water and soil and can migrate from soil to groundwater. *Id.* ¶ 33.

In 2021, government efforts to regulate PFAS commenced. *Id.* ¶ 44. That year, the Environmental Protection Agency (EPA) established a Reference Dose of PFAS, intended to estimate the daily exposure to the human population that is likely to be without an appreciable risk of deleterious effects. *Id*. About one year later, on June 15, 2022, EPA announced interim lifetime health advisories for PFOA and PFOS. *Id.* ¶ 45. Further regulatory efforts provided guidance for safe drinking water (which included guidance determinations for PFHxS), listing 9 PFAS (including PFOA and PFOS) as "hazardous constituents" under the Resource Conservation and Recovery Act ("RCRA"), and designating PFOA and PFOS as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), making sites contaminated with those substance subject to clean up under the Superfund law. *Id.* ¶¶ 46-51. Maryland has also announced a fish consumption advisory after detecting PFAS in fish tissue from the Chesapeake Bay. *Id.* ¶ 53.

In September, 2023, MDE discovered that Perdue's wastewater, which is disposed on cropland and forested areas by spray irrigation and is directly discharged to Peggy's Branch, contained highly elevated levels of PFAS compounds, including PFOS and PFOA. *Id.* ¶ 60. Perdue had not previously tested its wastewater for these substances but began testing in and around September, 2023. *Id.* ¶¶ 68-69. Perdue first notified a resident on September 30, 2023, that their drinking water had been contaminated. *Id.* ¶ 71. Subsequent testing of the ground water at the Agribusiness Facility, in January, 2024, revealed even more highly elevated levels of PFAS compounds, including PFOS and PFHxS. *Id.* ¶ 61. For example, the groundwater had 1370 ppt of

PFOS and 1300 ppt of PFHxS, where the EPA safe drinking water standards (as finalized by EPA in April 2024) are 4 ppt and 10 ppt, respectively. *Id.*

As of April, 2024, Perdue knew that PFAS from its wastewater had migrated downgradient to homeowners' private wells. *Id.* ¶ 70. Nevertheless, not until October 1, 2024, about a year after the elevated PFAS levels were initially discovered, did Perdue send letters to residents in the surrounding community, offering to supply bottled water and to test their well water. *Id.* ¶ 67.

Plaintiff Cheney lives about one mile from the Agribusiness Facility and uses a well system for potable water. *Id.* ¶¶ 72-74. The Davis Plaintiffs live about .75 miles from the Agribusiness Facility and use a well system for potable water. *Id.* ¶¶ 80-82. The Doss Plaintiffs live about 1.36 miles from the Agribusiness Facility and use a well system for potable water, in addition to using a stream on their property for recreational purposes. *Id.* ¶¶ 90-94. Plaintiffs allege generally that they have "suffered, and continue[] to suffer, from a variety of health effects that are known to be caused by exposure" to the chemicals discharged by Perdue, *see id.* ¶¶ 76, 83, 86, 96 and/or that they have been exposed "to increased risk of developing adverse health conditions, including cancer." *See e.g. id.* ¶¶ 95, 97.

Plaintiffs have identified "more than 500 homes with private shallow wells used for potable water located within two miles or more in the downgradient flow direction of" the Agribusiness Facility's wastewater disposal spray field and Peggy's Branch. *Id.* ¶ 64.

II. **LEGAL STANDARDS**

A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must

4

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56. In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

With its motion to dismiss, Perdue has attached ten exhibits and has submitted additional supplemental exhibits to the Court in separate filings.[1] Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the "documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir.2011). Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment. *Id.* This conversion is not appropriate when the parties have not had an opportunity to conduct reasonable discovery. *Id.*; *see* Fed. R. Civ. P. 12(b), 12(d), and 56.

Courts therefore should focus their inquiry on the sufficiency of the facts relied upon by the plaintiffs in the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Consideration of a document attached to a motion to dismiss ordinarily is

---

[1] Perdue suggests that it attached certain exhibits in support of the alternative motion to stay, not the motion to dismiss. ECF 36 at 2 n.4. It does not directly address the other attached exhibits.

permitted only when the document is "integral to and explicitly relied on in the complaint," and when "the plaintiffs do not challenge [the document's] authenticity." *Id.* (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir.1999)).

Viewing Perdue's attachments under that standard, none of them appear to be "integral to and explicitly relied on in the complaint." *See id.* Most of the attachments consist of letter correspondence between MDE and Perdue, samples of communications Perdue sent to nearby residents, and information relating to sampling at Plaintiffs' properties. See ECF 23-2 to ECF 23-11. While this Court understands that the facts alleged in Plaintiffs' Complaint will be disputed, review of the attachments and factual record proffered by Perdue is not appropriate at this early stage, when the focus rests exclusively on the sufficiency of the Complaint's allegations. This Court has considered the attached exhibits, then, only to the extent they bear on Perdue's motion to stay.

### III. ANALYSIS

#### A. Motion to Dismiss

Plaintiffs' Complaint asserts seven counts: Count I is strict liability and abnormally dangerous activity, Count II is negligence, Count III is private nuisance, Count IV is public nuisance, Count V is trespass, Count VI is vicarious liability, and Count VII requests a "preliminary and permanent injunction to cease pollution and remediate the environment."[2] ECF

---

[2] Plaintiffs have not yet filed any motion seeking preliminary injunctive relief. Additionally, Plaintiffs concede that "Counts VI and VII" describe liability theories and requests for relief that do not constitute independent causes of action. ECF 33-1 at 20-21. This Court will therefore dismiss the causes of action alleged in Counts VI and VII, although any allegations made in those sections remain part of the Complaint.

1. The first five counts will be addressed in turn, though this Court will first address the causation argument that Perdue contends is fatal to each claim.

   1. **Causation**

Perdue contends that Plaintiffs' claims are deficient because they have failed to connect the Perdue-related substances in their drinking water with any injuries they have suffered. It is true that three Plaintiffs only allege that they have suffered "a variety of health effects" without specification, and two others do not allege any present injury but simply an increased risk of future adverse health conditions, including cancer.[3] This Court concludes, however, that Plaintiffs have adequately alleged causation for two types of injuries they claim: injuries to their properties, and increased health risks warranting medical monitoring costs. Plaintiffs have alleged that Perdue caused their properties to be contaminated by at least three specific PFAS chemicals, ECF 1 ¶¶ 28-30, 73-78, 81-88, 91-98; they have identified those chemicals as PFOS, PFOA, and PFHxS, *Id.* ¶¶ 37-39, 58-71; they have pleaded that exposure to those chemicals has particular associated health impacts and risks for humans, *Id.* ¶¶ 37-39, and they have pleaded that the chemicals will have lasting detrimental impacts on their properties and property values, *Id.* ¶¶ 123, 136. Taking those allegations as true and in the light most favorable to Plaintiffs, they have therefore adequately pleaded injuries caused by Perdue's alleged actions.

This Court agrees with Perdue, however, that Plaintiffs have not adequately pleaded claims linking any of their existing medical conditions to Perdue's PFAS-related conduct. Without

---

[3] Plaintiffs provide more detail about their alleged "health effects" in a footnote to their opposition. ECF 33-1 at 12 n.3. But Plaintiffs cannot amend their complaint through motions briefing. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) (explaining that plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint").

specifying the health conditions they previously had or presently suffer from, they have neither provided Perdue adequate notice of their claims nor set forth facts plausibly establishing causation. Any such claims are dismissed without prejudice.

### 2. Strict Liability and Abnormally Dangerous Activity

Plaintiffs have adequately pleaded a strict liability and abnormally dangerous activity claim. Maryland's standard is that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." *Gallagher v. H.V. Pierhomes, LLC*, 957 A.2d 628, 634 (Md. Ct. Spec. App. 2008) (quoting Restatement (Second) of Torts § 519). The Restatement (Second) of Torts enumerates factors to be considered when weighing whether an activity is abnormally dangerous:

> (a) existence of a high degree of some harm to the person, land or chattels of another;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520, at 36 (1977). The parties disagree about how to identify Perdue's "activity," with Perdue suggesting that it should be "engaging in agricultural activities in an agricultural area." ECF 23-1 at 16. For purposes of a motion to dismiss, however, this Court will take the allegations in the light most favorable to Plaintiffs, who characterize the "activity" as "negligent, reckless and/or intentional handling of PFAS." ECF 33-1 at 14. Put differently, Plaintiffs assert that Perdue acted in an abnormally dangerous manner by disposing of wastewater containing PFAS compounds to fields and forests directly adjacent to residential property and discharging the wastewater to a stream that runs through residential neighborhoods. *Id.* at 15.

Plaintiffs' position is analogous to the facts presented in *Yommer v. McKenzie*, 257 A.2d 138 (Md. Ct. App. 1969), in which property owners sued an adjacent gas station after discovering gasoline in their wells. The gas station argues that "operating a gas station" was not an abnormally dangerous activity. However, the Court considered the "activity" to be a more nuanced one:

> Although the operation of a gasoline station does not itself involve 'a high degree of risk of some harm to the person, land or chattels of others,' the placing of a large underground gasoline tank in close proximity to the appellees' residence and well does involve such a risk, since it is not a matter of common usage.

*Yommer*, 257 A.2d. at 140.

While the ultimate determination on these issues will be reserved for later in this litigation, under the low bar standard appropriate to a motion to dismiss, Plaintiffs have alleged, at least, a high degree of permanent harm to land and persons, a likelihood of that the harm will be great due to long lasting detrimental environmental impacts from PFAS, an inability to eliminate risk by reasonable care, that the disposition of the PFAS-containing wastewaters in the manner chosen by Perdue was not a matter of common usage, that it was inappropriate to do these things in a location so close to residential properties with wells, and that the wastewater disposition offered no value to community. At the motion to dismiss stage, then, Plaintiffs' claim has been adequately alleged.

### 3. Negligence

Under well-established Maryland negligence jurisprudence, a properly pleaded claim of negligence includes four elements. Specifically, a plaintiff must show (1) that defendant owed a duty to protect the plaintiff from injury, (2) that defendant breached that duty, (3) that defendant's breach of the duty proximately caused the loss or injury suffered by the plaintiff, and (4) that the plaintiff suffered actual loss or injury. *See Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1049 (Md. Ct. Spec. App. 2011).

Plaintiffs' complaint amply alleges a variety of duties owed to neighboring properties and surrounding communities, ECF 1 ¶¶ 128, 129, 143, 144, 147. It also alleges that Perdue knew or should have known, prior to 2023, that the materials used at the Agribusiness Facility would release PFAS into the environment and that PFAS could foreseeably cause harm to Plaintiffs. *Id.* ¶¶ 68-70, 126-27. Finally, Plaintiffs specifically allege that Perdue learned from MDE in 2023 that its actions posed a risk to Plaintiffs but waited more than a year to advise Plaintiffs and other class members, allowing them to continue to be exposed to the environmental hazards in the meantime. *Id.* ¶¶ 60, 67. On those facts, taken as true for purposes of this motion, Plaintiffs have adequately pleaded a negligence claim.

4. **Nuisance Claims**

In response to Plaintiffs' public and private nuisance claims, Perdue invokes Maryland's and Wicomico County's "Right to Farm Laws," Md. Code Ann., Cts. & Jud. Proc. § 5-403 and Wicomico Cnty. § 186-4(B), which require that a nuisance action against an agricultural operation first be brought before the Wicomico County Agricultural Reconciliation Committee. This Court agrees with Perdue that, as described by Plaintiffs in their Complaint, Perdue's business would qualify as an "agricultural operation" protected by the Right to Farm Laws. *See* ECF 23-1 at 19. Plaintiffs specifically allege that the Agribusiness Facility consists of "grain storage, a feed mill, soybean extraction plant, an oilseeds refinery, hatcheries, and marigold greenhouses."[4] ECF 1 ¶ 56. This Court rejects Plaintiff's argument that the Maryland law requires that all of the agricultural

---

[4] By contrast, in its opposition, Plaintiffs suggest that the facility "operates as an industrial soybean processor and refinery." ECF 33-1 at 20. But this Court must take the allegations in the Complaint as true.

crops being processed must have been "grown, raised, or cultivated by the farmer,"[5] and also notes that Plaintiffs expressly describe on-farm production of agricultural products occurring at the Agribusiness Facility.

However, this Court cannot conclude, from the face of the Complaint, that Plaintiffs failed to comply with the requirements of the two Right to Farm Laws. Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards v. Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies ... if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250). Because those facts do not appear in the Complaint here, resolution of the issue would be inappropriate at the motion to dismiss stage and must await a later stage of the proceeding.

Perdue also contends that Plaintiffs have not adequately stated a claim for public nuisance because they suggest that the harm is limited to a particular class of residents and not the public at

---

[5] As Perdue notes, the statutory interpretation required here is a simple matter of subject-verb agreement. The phrase "that has been grown, raised, or cultivated by the farmer" relates to the immediately preceding clause and the singular word "product," and not to the earlier phrase ending in the plural noun "crops." ECF 36 at 10.

large. ECF 23-1 at 19-20. This Court agrees with Plaintiffs, however, that existing caselaw and the Restatement (Second) of Torts § 821(C) appear to allow a public nuisance claim in a groundwater contamination case, even where the groundwater contamination may confer particular personal injury on certain plaintiffs that do not extend to all. ECF 33-1 at 23-24. Accordingly, Plaintiffs' nuisance claims survive dismissal.

### 5. Trespass

This Court also declines to dismiss the trespass claim at this stage. It agrees with the parties that Maryland courts have not squarely addressed the standard for so-called "intangible trespass" involving invisible chemicals. But there are facts in dispute that potentially could affect the analysis, such as whether PFAS chemicals cause "physical damage" to property and whether the PFAS chemicals at issue in this case have actually reached the groundwater of each Plaintiff's property. A prediction regarding how Maryland courts might view this novel issue will be better attempted on a more complete factual record and, accordingly, Perdue's motion to dismiss Count Five will be denied.

## B. Motion to Stay

In the alternative, Perdue asks this Court to stay this lawsuit pending MDE's investigation of the Agribusiness Facility. Perdue contends that this Court should defer to the "special competence of an administrative agency," yielding primary jurisdiction until MDE has fully evaluated the technical issues pertaining to the matter.

At this early stage of the case, this Court sees no reason to grant a stay. This case will proceed to discovery, during which this Court is unlikely to make any findings or rulings that might conflict with any determinations that MDE might make in its investigation. The matter of environmental contamination is one of some urgency, and the precise timeline of the MDE

investigation (and the scope of any potential relief) is unclear. Some forms of relief sought by the Plaintiffs, such as monetary damages and medical monitoring, are unlikely to be addressed via the administrative investigation. While this Court will not preclude Perdue from re-raising the issue should it be appropriate as this case and the administrative investigation both proceed, at this stage, Perdue's motion for stay will be denied.[6]

## IV. CONCLUSION

For the reasons stated above, Perdue's motion to dismiss or, in the alternative, motion to stay, ECF 23, is GRANTED IN PART AND DENIED IN PART. Counts Six and Seven of the Complaint will be DISMISSED WITHOUT PREJUDICE and the case will proceed, with no stay, as to the remaining counts. Plaintiffs' motion for leave to file a surreply, ECF 42, is DENIED AS MOOT. A separate Order follows.


Dated: August 12, 2025                                             /s/
                                                          Stephanie A. Gallagher
                                                          United States District Judge

---

[6] Plaintiffs' proposed surreply focuses only on Defendants' request for a stay, which is denied. Therefore, Plaintiffs' motion for leave to file a surreply, ECF 42, will be denied as moot.