# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RACHEL M. CHANEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PERDUE FARMS INC., FPP BUSINESS SERVICES INC. d/b/a PERDUE FARMS INC., PERDUE AGRIBUSINESS LLC, PERDUE AGRIBUSINESS INCORPORATED d/b/a PERDUE AGRIBUSINESS LLC, PERDUE AGRIBUSINESS GRAIN LLC d/b/a PERDUE AGRIBUSINESS LLC, PERDUE FOODS LLC, and PERDUE FOODS INCORPORATED d/b/a PERDUE FOODS LLC,<br><br>Defendants and Third-Party Plaintiffs,<br><br>v.<br><br>JOHNSON CONTROLS INTERNATIONAL PLC<br>5757 N. Green Bay Avenue<br>Glendale, Wisconsin 53209, *and*<br>One Albert Quay<br>Cork, Ireland T12 X8N6<br><br>TYCO FIRE PRODUCTS L.P.<br>One Stanton Street<br>Marinette, Wisconsin 54143<br><br>JOHNSON CONTROLS, INC.<br>5757 North Green Bay Avenue<br>Milwaukee, Wisconsin 54143<br><br>JOHNSON CONTROLS FIRE PROTECTION LP<br>18 Boulden Circle<br>New Castle, Delaware 19720 | C.A. No.: 1:24-cv-2975 |

CHEMGUARD, INC.
One Stanton Street
Marinette, Wisconsin 54143

Third-Party
Defendants.

**PERDUE'S THIRD-PARTY COMPLAINT AGAINST JOHNSON CONTROLS**

**INTRODUCTION**

1. By this third-party action, Perdue seeks to place liability on Johnson Controls for its sale and mishandling of fire-suppressing aqueous film-forming foams ("AFFF") that contain certain chemicals that Plaintiffs claim have found their way into groundwater in and surrounding the Perdue AgriBusiness facility in Salisbury, Maryland (the "Facility").

2. Perdue, a family-owned company founded over 100 years ago in Maryland, has long been a leading provider of agricultural products and services. One product is soybeans. Perdue either sells the unprocessed soybeans or processes them at the Facility to create soybean meal (to feed animals) and soybean oil (a vegetable oil with many cooking and industrial uses).

3. Extracting soybean oil from the beans involves hexane, which is a flammable liquid.

4. Like airports, military installations, and other industrial sites that maintain flammable liquids on site, Perdue must have a system to quickly suppress fire. Because Perdue is not in the fire suppression business, Perdue relied on outside contractors including Johnson Controls (and Johnson Controls' subsidiaries, affiliates, and predecessors) to maintain and test its fire suppression system at the Facility. That system was designed to rapidly discharge water mixed with AFFF to the areas of the soybean-processing plant where hexane is present.

5. Johnson Controls repeatedly caused AFFF to be discharged at the Facility's soybean-processing plant. These discharges occurred during Johnson Controls' testing and maintenance of the fire suppression system. The discharges had no effect on Perdue's products; rather, the discharges caused AFFF to enter the groundwater in and surrounding the Facility.

6. In addition to maintaining Perdue's fire suppression system, Johnson Controls manufactured and sold AFFF that were used in the fire suppression system.

7. Unbeknownst to Perdue—but known to Johnson Controls—the AFFF that Johnson Controls installed in Perdue's fire suppression system (and subsequently released from that system) contained chemicals that Plaintiffs allege are harmful to humans' health.

8. In this present lawsuit, as well as a related lawsuit in the District of Maryland and a related investigation by the Maryland Department of the Environment ("MDE"), there are allegations that Perdue is responsible for the presence of these chemicals in water on and surrounding the Facility. But Johnson Controls is responsible.

9. For that reason, Perdue brings this third-party complaint against Johnson Controls for damages, indemnification, and contribution.

## NATURE OF THE ACTION

10. Defendants/Third-Party Plaintiffs are Perdue Farms, Inc., FPP Business Services, Inc. d/b/a Perdue Farms Inc., Perdue AgriBusiness LLC, Perdue AgriBusiness Incorporated d/b/a Perdue AgriBusiness LLC, Perdue AgriBusiness Grain LLC d/b/a Perdue AgriBusiness LLC, Perdue Foods LLC, and Perdue Foods Incorporated d/b/a Perdue Foods LLC (collectively, "Perdue").[1]

[1] Perdue AgriBusiness Grain LLC, FPP Business Services Inc., Perdue AgriBusiness Incorporated, and Perdue Foods Incorporated no longer exist as separately cognizable entities but are named as Third-Party Plaintiffs in an abundance of caution.

11. Third-Party Defendants are Johnson Controls International PLC, Tyco Fire Products LP ("Tyco"), Johnson Controls, Inc. ("JCI"), Johnson Controls Fire Protection LP ("JCFP"), and Chemguard, Inc. ("Chemguard") (collectively, "Johnson Controls").

12. This is an action for damages, indemnification, and contribution arising out of: (1) Johnson Controls' design, manufacture, marketing, distribution, supply, and sale of AFFF installed and utilized in the fire suppression system at the Facility; (2) Johnson Controls' installation, handling, and use of AFFF in the fire suppression system at the Facility; and (3) Johnson Controls' negligent, reckless, or willful releases of large volumes of AFFF in the Facility, as well as into the soil and water of Perdue's Zion Church Road property upon which the Facility is located ("Property"), in breach of Johnson Controls' duty of care.

13. AFFF are a fire suppressant used to control and extinguish highly hazardous liquid fires. AFFF contain or break down into per- and polyfluoroalkyl substances ("PFAS"), which resist degradation and can persist almost indefinitely after being introduced into soil, water, and other media. Johnson Controls' AFFF products, including those distributed under the brands Ansul, Ansulite, and/or Chemguard, contained or broke down into PFAS.

14. As a result of Johnson Controls' conduct, PFAS traceable to the use and release of AFFF products are alleged by Plaintiffs to have contaminated and continue to contaminate the Facility and the Property, potentially including soil, sediment, surface water, groundwater, and other systems, and undoubtedly including the fire suppression system and wastewater treatment system associated with Perdue's operations on the Property ("Systems").

15. Perdue has expended, and will continue to expend, significant money and resources to investigate, test, inspect, monitor, and remediate the PFAS contamination and pollution caused by Johnson Controls. Perdue brings this action to recover all past, present, and future expenses,

fees (including attorneys' fees), costs, losses, and damages arising out of the PFAS contamination of the Facility, the Systems, and the Property caused by Johnson Controls, as well as all other relief that is deemed just and proper.

16. Additionally, Perdue has incurred, and will continue to incur, significant costs associated with governmental investigations and litigation involving claims that PFAS originating from Johnson Controls' contamination of the Facility, Systems, and Property has caused contamination of the environment surrounding the Property, alleged by Plaintiffs in this action as causing, or threatening to cause, injury to other persons and/or property. Perdue is also entitled to full and complete indemnification and/or contribution from Johnson Controls for all expenses, fees (including attorneys' fees), costs, and other expenditures Perdue has incurred, and will continue to incur, to respond to the investigations required by MDE and implement the remediation and other directives of MDE, to remediate or implement preventative measures on other properties, and to defend itself in litigation.

17. Perdue denies that it is liable for any injury or damage asserted in this action, or other litigations or investigations. Nevertheless, in the event judgment is entered against Perdue on any claim that PFAS contamination originating from the Facility and/or the Property injured or damaged any other person, entity, or property, Perdue is entitled to full and complete indemnification and/or contribution from Johnson Controls for any judgment and award of damages against Perdue, if any, arising from such claims, in addition to relief based on the harm Johnson Controls inflicted on Perdue's Facility, Systems, and Property.

## THE PARTIES

### Defendants / Third-Party Plaintiffs

18. **Perdue Farms Inc.** is a corporation formed and existing under the laws of the State of Maryland with its principal place of business in Salisbury, Maryland.

19. **FPP Business Services Inc. d/b/a Perdue Farms Inc.** was a corporation formed under the laws of the State of Maryland with its principal place of business in Salisbury, Maryland.

20. **Perdue AgriBusiness LLC** is a limited liability company formed under the laws of the State of Maryland with its principal place of business in Salisbury, Maryland. It is owned entirely by Perdue Farms Inc., and Perdue Farms Inc. is its sole member.

21. **Perdue AgriBusiness Incorporated d/b/a Perdue AgriBusiness LLC** was a corporation formed under the laws of the State of Maryland with its principal place of business in Salisbury, Maryland.

22. **Perdue AgriBusiness Grain LLC d/b/a Perdue AgriBusiness LLC** was a limited liability company formed under the laws of the State of Maryland with its principal place of business in Salisbury, Maryland. At no time was any member of Perdue AgriBusiness Grain LLC a resident of a state other than Maryland.

23. **Perdue Foods LLC** is a limited liability company formed and existing under the laws of the State of Maryland with a principal place of business in Salisbury, Maryland. It is owned entirely by Perdue Farms Inc., and Perdue Farms Inc. is its sole member.

24. **Perdue Foods Incorporated d/b/a Perdue Foods LLC** was a corporation formed under the laws of the State of Maryland with a principal place of business in Salisbury, Maryland.

## Third-Party Defendants

25. **Johnson Controls International PLC** is an Irish public limited company listed on the New York Stock Exchange, and it is the ultimate owner of the four United States-based entities below. In January of 2016, Johnson Controls Inc. merged with Tyco International PLC, resulting in the combined company: Johnson Controls International PLC.

26. **Tyco Fire Products LP ("Tyco")** is a limited partnership formed in the State of Delaware with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Tyco is an indirect subsidiary ultimately wholly owned by Johnson Controls International PLC.

a. Tyco has two partners: Central Sprinkler LLC and Fire Products Holding LLC. The members of these limited liability companies are wholly owned by Tyco Fire & Security (US) Management, Inc., which is incorporated in Nevada and has its principal place of business in New Jersey.

b. Tyco is a successor-in-interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990. Beginning in or around 1975, Ansul manufactured and/or distributed and sold AFFF containing PFAS. After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute, and sell AFFF containing PFAS.

c. In or around 2009, Tyco merged with Ansul LLC, the successor of Ansul. Tyco was the surviving entity and is responsible for all the liabilities of Ansul LLC and its predecessors.

d. Tyco is a key brand business of Johnson Controls and part of Johnson Controls' security and fire portfolio.

e. At all times relevant to this action, Tyco designed, manufactured, researched, tested, distributed, sold, and installed AFFF products, including Ansul- and Chemguard-branded AFFF.

f. Tyco does and/or has done business throughout the United States, including in the State of Maryland.

27. **Johnson Controls, Inc. ("JCI")** is a Delaware corporation doing business throughout the United States. Johnson Controls has its principal place of business at 5757 North Green Bay Avenue, Milwaukee, Wisconsin 53209.

a. JCI is the parent of Tyco Fire Products, LP and Chemguard, Inc.

b. JCI merged with SimplexGrinnell LP and Jagara Merger Sub LLC in September 2016.

c. JCI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in AFFF, including in Maryland.

28. **Johnson Controls Fire Protection LP ("JCFP")** is a Delaware Foreign Limited Partnership with its principal place of business in Milwaukee, Wisconsin.

a. JCFP has four partners: (1) Simplex Time Recorder LLC, a Massachusetts limited liability company; (2) Tyco Fire Protection LLC, a Delaware limited liability company; (3) Master Protection, LP, a Delaware limited partnership; and (4) STR Grinnell GP Holding, LLC, a Nevada limited liability company.

b. JCFP was previously known as Simplex Grinnell LP, having executed a legal name change in or around 2017.

c. JCFP designs, installs, and services fire suppression systems, including systems that utilized AFFF.

d. JCFP does and/or has done business throughout the United States, including the State of Maryland.

29. **Chemguard, Inc. ("Chemguard")** is a corporation formed and existing under the laws of the State of Wisconsin with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

a. Tyco acquired Chemguard in 2011.

b. At all times relevant to this action, Chemguard researched, developed, designed, tested, and manufactured AFFF products.

**<u>JURISDICTION AND VENUE</u>**

30. This Court has jurisdiction pursuant to 28 U.S.C. § 1367 because the claims contained herein are sufficiently related to Plaintiffs' original claims such that they form part of the same case or controversy under Article III of the United States Constitution.

31. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between Third-Party Plaintiffs and Third-Party Defendants and the amount in controversy exceeds $75,000, exclusive of costs and interest.

32. This Court has personal jurisdiction over Third-Party Defendants because each Third-Party Defendant is, or was during the relevant time period, licensed to do business in Maryland, is transacting business or was transacting business in Maryland, or has other significant contacts with Maryland.

33. Venue within the District of Maryland is appropriate because the events alleged and Johnson Controls' conduct occurred in or around Salisbury, Maryland, and the resulting damages, including property contamination, are found in or around Salisbury, Maryland.

## FACTUAL ALLEGATIONS

### Johnson Controls' Long History of Manufacturing and Promoting AFFF

34. For decades, Johnson Controls has designed, manufactured, marketed, sold, installed, and serviced industrial fire suppression systems, building a reputation as an expert in the fire suppression industry.

35. Johnson Controls entered the AFFF manufacturing arena when it merged with Tyco in 2016. By that time, Tyco had acquired, and was manufacturing, several lines of AFFF.

36. AFFF have long been utilized to extinguish and control flammable liquid fires. AFFF concentrate is designed to be mixed with water to form a solution that can be broadcast over a fire or onto flammable liquids to prevent ignition.

37. Tyco acquired the Ansul line of AFFF products in 2009 after merging with Ansul.

38. Ansul had been researching, developing, designing, manufacturing, marketing, distributing, supplying, and/or selling AFFF products containing PFAS, or that broke down into PFAS, since the early 1970s.

39. In 2011, Tyco expanded its AFFF product offerings after acquiring Chemguard.

40. Chemguard began offering AFFF products for sale in or around 1988. Like the Ansul AFFF products, the Chemguard AFFF contained or broke down into PFAS.

41. Tyco continued the work of Ansul and Chemguard, researching, developing, designing, manufacturing, testing, marketing, distributing, supplying and/or selling industrial fire suppression products, including AFFF products containing PFAS or that broke down into PFAS.

42. In addition to designing, manufacturing, marketing, supplying, and selling AFFF, Johnson Controls provided other services related to industrial fire suppression systems. Johnson

Controls' services included installing, maintaining, inspecting, testing, and repairing fire suppression systems.

**Johnson Controls Knew Its AFFF Products Caused Environmental Contamination But Continued Manufacturing, Selling, and Installing Them Anyway**

43. Long before Johnson Controls' AFFF were ever sold to Perdue and installed at the Facility, Johnson Controls had possession of, and access to, substantial information about PFAS and the potential risks of contamination PFAS-based AFFF products posed anywhere the AFFF were stored, spilled, or discharged.

44. For example, in 1976, the United States Navy engaged Tyco (Johnson Controls' predecessor and subsidiary) to assess the environmental impact of AFFF. Tyco's study indicated that PFAS from AFFF did not degrade and presented a significant risk of environmental contamination.

45. In or around 1993, Tyco began environmental testing at its Fire Testing Center in Marinette, Wisconsin to determine whether AFFF products had contaminated the groundwater and soils on the property. The Fire Testing Center had been used for AFFF research, development, testing, manufacturing, and training since the 1960s. Tyco continued its environmental contamination testing at the Fire Testing Center for years.

46. By 2014, if not earlier, the testing showed significant levels of two types of PFAS contamination in the soil and groundwater at the Fire Testing Center, as well as in potable water wells in the vicinity of Tyco's Marinette property.

47. Beginning in 2017, Johnson Controls, having merged with Tyco in 2016, halted all outdoor testing of AFFF at the Fire Testing Center and began construction of a wastewater treatment facility to remove PFAS from its industrial wastewater.

48. In January 2018, the Wisconsin Department of Natural Resources notified Johnson Controls that it had been named "a responsible party" for PFAS contamination in the waters of Peshtigo, Wisconsin and directed Johnson Controls to submit plans for remediating the contamination.

49. In 2023, Johnson Controls abandoned the production and sale of AFFF and announced it would transition production to non-fluorinated foam alternatives. These alternative foam products do not contain and do not break down into PFAS. Johnson Controls could have, and should have, made the transition to non-fluorinated foam alternatives years earlier.

**Perdue, Its Soybean Processing Facility, and Its Salisbury Property**

50. Perdue, a family-owned company founded in Maryland, has been providing agricultural products to consumers and industry for over 100 years. Perdue's agricultural operations include, among others, soybean processing, soy oil refining, and production of feed for livestock. The Facility is one of Perdue's soybean processing plants.

51. Processing soybeans to extract their oil requires the use of hexane, a flammable liquid. As with other companies that store and utilize large volumes of flammable liquids, Perdue was required to employ a fire suppression system specifically designed for Class B fires—those involving flammable liquids—at the Facility.

52. Perdue retained and relied upon Johnson Controls, an expert in fire suppression systems and materials, to maintain, inspect, repair, and test the fire suppression systems at the Facility.

53. As part of that service, Johnson Controls supplied and sold its AFFF products to Perdue, installed those AFFF products in the Facility's fire suppression system that protected the

area where hexane was stored and used, and performed testing and maintenance on that fire suppression system.

54. The Johnson Controls AFFF products used at the Facility were designed and intended to deploy an AFFF solution in the event of fire.

**Johnson Controls Contaminates Perdue's Facility, Property, and Systems with PFAS**

55. Beginning at least as early as 2012, Johnson Controls manufactured, supplied, and sold AFFF that were installed in the fire suppression system at the Facility. At all relevant times, those Johnson Controls AFFF products installed in Perdue's fire suppression system contained PFAS or broke down into PFAS.

56. Johnson Controls did not advise Perdue of the risks associated with the PFAS in Johnson Controls' AFFF products that were installed in the fire suppression system.

57. At least as early as June 2014, Johnson Controls peddled its expert fire suppression services to Perdue, eventually securing Perdue's trust to maintain, inspect, repair, and test Perdue's fire suppression system.

58. Johnson Controls' subsequent conduct at the Facility did not live up to Johnson Controls' reputation and its representations that it was an expert, nor did it meet Perdue's reasonable expectations that Johnson Controls was an expert.

59. On several occasions, without Perdue's approval, consent, or prior knowledge, Johnson Controls released large volumes of AFFF at the Facility and onto the Property during Johnson Controls' testing and maintenance of the fire suppression system at the Facility.

60. The large volume of expanding AFFF solution released is alleged to have made its way into the Facility's wastewater drains and wastewater treatment system, and eventually into the groundwater at and around the Facility.

61. Johnson Controls did not undertake to collect or contain the AFFF it released. Rather, Perdue immediately initiated efforts to contain and collect the AFFF, including quickly hiring a contractor with expertise in collecting and disposing materials like AFFF.

**MDE Investigates Perdue**

62. In August 2023, water at the Facility was tested for PFAS.

63. That testing indicated that PFAS was present in the groundwater on the Property, prompting an investigation by MDE and requirements for additional testing.

64. On September 12, 2024, MDE issued a letter designating Perdue, as the owner of a site containing PFAS, a "responsible person" as defined by Maryland Code, Environment § 7-201. MDE requested that Perdue further investigate the nature and extent of the PFAS contamination.

65. MDE subsequently expanded the scope of its investigation to neighboring properties, requiring that Perdue notify property owners of potential PFAS contamination and offer to test the property owners' wells.

66. In the months that followed and at significant expenditure of resources, Perdue worked with MDE to investigate the extent of the PFAS contamination and to develop remedial measures to contain the PFAS contamination. These measures included extensive testing of soil, sediment, systems, groundwater, process water, and surface water, as well as installation of monitoring wells. Based on the investigation, the only site-specific source of the PFAS contamination is AFFF.

67. As a result of the contamination, Perdue has upgraded its wastewater treatment plant and installed systems throughout its Facility to treat water for PFAS. Perdue has also ceased utilizing its wastewater irrigation system and removed and disposed of contaminated soils, dredge

spoils, and sediment. Perdue had to temporarily suspend use of potable water resources, and suspend or delay certain operations, installations, and plans for expansion.

68. Perdue decommissioned the AFFF fire suppression system at the Facility and replaced it with a new fire suppression system that uses fluorine-free foam.

69. Pursuant to the MDE investigation, Perdue has also tested hundreds of wells on properties within an area designated by MDE. In addition to providing bottled water, Perdue has installed and maintained, at no charge to the property owners, hundreds of point-of-entry-treatment ("POET") systems to remediate PFAS contamination in drinking water. Perdue will continue to perform substantial additional monitoring and testing for the surrounding properties, as well as installing and maintaining additional POET systems.

**Certain Salisbury Residents Sue Perdue**

70. On October 11, 2024, this purported class action lawsuit was filed against Perdue, *Chaney v. Perdue Farms, Inc.*, Case No. 1:24-cv-02975 (D. Maryland). The complaint alleges that PFAS contamination from the Property migrated into the air and groundwater surrounding the Property, and onto property and into wells owned by other Salisbury residents.

71. The complaint also alleges that individuals have suffered injury to their properties and/or their bodies, or that the contamination has increased the risk of injury to their bodies.

72. The Plaintiffs seek injunctive relief to establish medical monitoring for the putative class members and monetary damages for claimed diminution of property values, loss of use and enjoyment of their properties, loss of quality of life, medical monitoring, remediation of their

properties, and provision of safe drinking water, as well as all fees and costs associated with the litigation.[2]

73. On July 25, 2025, several Salisbury residents filed a second lawsuit against Perdue, *Jones v. Perdue Farms, Inc.*, Case No. 1:25-cv-02455 (D. Maryland), seeking declaratory and injunctive relief, the assessment of civil penalties, attorneys' and expert fees, and such other relief the Court deems appropriate to remedy Perdue's alleged violations of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972.

74. The *Jones* lawsuit claims that water and soil at or from the Property are contaminated with PFAS and that those PFAS have harmed drinking water and surface water used by Plaintiffs, harming aquatic life as well as the recreational, aesthetic, and/or commercial interests of citizens in areas surrounding the Property.

75. Perdue denies any liability and has defended, and will continue to defend, itself against the claims in each case.

## **CAUSES OF ACTION**

### **COUNT I**

**Strict Liability for Abnormally Dangerous Product and Defective Design**

76. Perdue incorporates by reference the allegations contained in paragraphs 1-75 as if alleged herein.

77. At all times during the relevant time period, Johnson Controls designed, developed, manufactured, and tested AFFF products containing PFAS or constituents that break down into PFAS, and marketed, distributed, and sold those products to Perdue, installing them at the Facility.

[2] The Court dismissed Plaintiffs' personal injury claims without prejudice. *Chaney*, ECF No. 44 (D. Md. Aug. 12, 2025).

78. The Johnson Controls' AFFF products distributed and/or sold for installation and use at the Facility were inherently defective, unreasonably dangerous, and not reasonably suited for their intended, foreseeable, and ordinary storage, handling, and use because:

a. Johnson Controls' AFFF products contain PFAS and/or constituents that break down into PFAS;

b. Even when used as intended—to prevent or stop combustion of flammable liquids—Johnson Controls' AFFF products release PFAS into the environment;

c. Accidental spills, leaks, and unintended releases of AFFF products commonly occur, and the resulting release of PFAS into the environment was foreseeable;

d. When released into the environment, PFAS rapidly migrate through soil and water, and persist indefinitely until removed;

e. Even small concentrations of PFAS can render soil and water contaminated and require remedial treatment;

f. Johnson Controls, despite knowledge of the risks of environmental contamination associated with PFAS, failed to use reasonable care in the design and manufacture of its AFFF products; and,

g. At all relevant times, the foreseeable harm to Perdue, the environment, and other end-users posed by Johnson Controls' AFFF products outweighed the cost of reducing or eliminating such harms.

79. At all relevant times, Johnson Controls knew or should have known about reasonably safer and feasible alternatives to their AFFF products, and the failure to utilize such alternative designs rendered their AFFF products not reasonably safe. In fact, safer alternatives

that do not contain PFAS or constituents that break down into PFAS, including non-fluorinated foams, have existed, and were available to Johnson Controls, at all times relevant to this action.

80. The inherent defects and risks exceeded the knowledge of ordinary customers, such as Perdue, and the general public exercising ordinary care.

81. Johnson Controls' AFFF products were expected to, and did, reach Perdue without substantial change in condition following their manufacture, sale, and installation.

82. As a direct and proximate cause of Johnson Controls' acts and omissions, Perdue has been damaged and will continue to be damaged. Perdue has suffered significant injury including, but not limited to, contamination and/or pollution of its Facility, Property, and Systems. Perdue has incurred, is incurring, and will continue to incur substantial costs with the investigation, testing, monitoring, remediation, removal, and treatment of the contamination and pollution.

83. Third-Party Defendants are strictly, jointly, and severally liable for Perdue's injuries.

84. Third-Party Defendants acted with willful or conscious disregard for the rights of Perdue and the safety of its Facility and Property, thereby entitling Perdue to an award of punitive damages.

**COUNT II**

**Strict Liability for Failure to Warn**

85. Perdue incorporates by reference the allegations contained in paragraphs 1-75 as if alleged herein.

86. Manufacturers are strictly liable when they fail to provide adequate warnings about the hazards of a product sold in an unreasonably dangerous condition.

87. Johnson Controls was required to warn Perdue of the dangers posed by Johnson Controls' AFFF products and the contamination that would result from their intended use as well as other discharges, releases, and spills.

88. Johnson Controls knew, or should have known, the likelihood of harm its AFFF products posed at the time those products were manufactured, marketed, distributed, sold, installed, used, discharged, and/or released, but failed to warn Perdue.

89. Johnson Controls represented that its AFFF products did not require special handling or precautions. Any warnings it did provide were not sufficiently detailed to provide adequate warning to reasonable users of the danger of PFAS contamination associated with Johnson Controls' AFFF products.

90. Had Johnson Controls provided such warnings about the hazards associated with their AFFF products, Perdue would have heeded those warnings.

91. Johnson Controls' failure to provide adequate warnings about the risks of PFAS contamination that its AFFF products posed rendered those products unreasonably dangerous.

92. At all times relevant to this action, Johnson Controls had actual or constructive knowledge that its AFFF products were unreasonably dangerous, including for the following reasons:

a. Johnson Controls' AFFF products contain PFAS and/or constituents that break down into PFAS;

b. Even when used as intended—to prevent or stop combustion of flammable liquids—Johnson Controls' AFFF products release PFAS into the environment;

c. Accidental spills, leaks, and unintended releases of AFFF products commonly occur and the resulting release of PFAS into the environment was foreseeable;

d. When released into the environment, PFAS rapidly migrate through soil and water, and persist indefinitely until removed;

e. Even small concentrations of PFAS can render soil and water contaminated and require remedial treatment;

f. Johnson Controls, despite knowledge of the risks of environmental contamination associated with PFAS, failed to use reasonable care in the design and manufacture of its AFFF products;

g. The foreseeable harm to Perdue, the environment, and other end-users posed by Johnson Controls' AFFF products outweighed the cost of reducing or eliminating such harms; and,

h. Johnson Controls knew or should have known about reasonably safer and feasible alternatives to their AFFF products, and the failure to utilize such alternative designs rendered their AFFF products not reasonably safe. In fact, safer alternatives that do not contain PFAS or constituents that break down into PFAS, including non-fluorinated foams, have existed, and were available to Johnson Controls.

93. The facts related to the hazards associated with Johnson Controls' AFFF products are not the type of facts that are commonly known, or ordinarily discernable to customers including Perdue. Absent sufficient warnings from Johnson Controls, Perdue was unable to protect itself from the risks of PFAS contamination that Johnson Controls' AFFF products posed.

94. Despite knowing about the risks associated with its AFFF products that contained PFAS, Johnson Controls withheld such knowledge from Perdue and other purchasers, governmental entities, and the public. Moreover, Johnson Controls distorted and/or concealed its knowledge and scientific evidence linking its products to the unreasonable risks they pose.

95. As a direct and proximate result of Johnson Controls' failure to warn of the dangers of its AFFF products that contained PFAS, the Facility and the Property have been contaminated with PFAS. Perdue has been damaged and will continue to be damaged. Perdue has suffered significant injury including, but not limited to, contamination and/or pollution of its Facility, Property, and Systems. Perdue has incurred, is incurring, and will continue to incur substantial costs with the investigation, testing, monitoring, remediation, removal, and treatment of the contamination and pollution.

96. Third-Party Defendants are strictly, jointly, and severally liable for Perdue's injuries.

97. Third-Party Defendants acted with willful or conscious disregard for the rights of Perdue and the safety of its Facility and Property, thereby entitling Perdue to an award of punitive damages.

**COUNT III**

**Negligence**

98. Perdue incorporates by reference the allegations contained in paragraphs 1-75 as if alleged herein.

99. As the designer, developer, manufacturer, marketer, distributor, seller, and installer of its AFFF products, Johnson Controls had a duty to individuals and entities that its products might foreseeably harm, including Perdue, to exercise due care in the design, development, manufacture, marketing, sale, testing, labeling, instructions for use, and installation of those products.

100. Johnson Controls had a duty to provide, consistent with its representations, firefighting foam that would not cause PFAS contamination when released.

101. Johnson Controls had a duty to warn Perdue of the risk of PFAS contamination that Johnson Controls' AFFF products posed.

102. Johnson Controls had a duty not to contaminate the environment with PFAS, including at the Facility, on the Property, and in the Systems.

103. Johnson Controls had a duty to Perdue to ensure that Johnson Controls did not cause PFAS contamination due to the release, discharge, leaking, or spilling of its AFFF products.

104. Johnson Controls has a duty to not injure Perdue's Facility, Systems, or Property, including the soil, sediment, groundwater, surface water, watercourses, aquifers, and storm systems therein.

105. At all times relevant to this Action, Johnson Controls knew or should have known that its AFFF products presented environmental risks because:

a. Johnson Controls' AFFF products contain PFAS and/or constituents that break down into PFAS;

b. Even when used as intended—to prevent or stop combustion of flammable liquids—Johnson Controls' AFFF products release PFAS into the environment;

c. Accidental spills, leaks, and unintended releases of AFFF products commonly occur and the resulting release of PFAS into the environment was foreseeable;

d. When released into the environment, PFAS rapidly migrate through soil and water, and persist indefinitely until removed; and

e. Even small concentrations of PFAS can render soil and water contaminated and require remedial treatment.

106. The facts related to the hazards associated with Johnson Controls' AFFF products are not the type of facts that are commonly known or ordinarily discernable to customers including

Perdue. Absent sufficient warnings from Johnson Controls, Perdue was unable to protect itself from the risks of PFAS contamination Johnson Controls' AFFF products posed.

107. Perdue stored, handled, and used Johnson Controls' AFFF products in a normal, foreseeable manner.

108. Johnson Controls breached its duty of care by, among other things:

a. Designing, formulating, manufacturing, marketing, and selling its AFFF products when it knew or should have known that those products would cause PFAS to be released into the environment and into the Facility, Property, and Systems;

b. Promoting, distributing, selling, and installing its AFFF products while concealing the risks of PFAS contamination those products posed;

c. Providing firefighting foam that contained PFAS and installing those products in the fire suppression system at the Facility;

d. Failing to minimize or eliminate the risks of environmental contamination its AFFF products pose;

e. Failing to warn customers, including Perdue, of the environmental hazards associated with its AFFF products;

f. Failing to instruct purchasers, including Perdue, on the safe handling, use, and disposal of its AFFF products;

g. Intentionally or recklessly releasing AFFF in the Facility and on the Property even though there was no fire or flammable liquid spill requiring application of any fire suppression product; and,

h. Failing to take appropriate corrective actions to contain, collect, and dispose of the AFFF it released at the Facility and onto the Property and remediate soil, water, and systems contaminated by the AFFF it released.

109. As a direct and proximate result of Johnson Controls' acts and omissions, the Facility, the Property, and the Systems have been contaminated with PFAS.

110. As a further direct and proximate result of Johnson Controls' acts and omissions, Perdue has been damaged and will continue to be damaged. Perdue has suffered significant injury including, but not limited to, contamination and/or pollution of its Facility, Property, and Systems. Perdue has incurred, is incurring, and will continue to incur substantial costs with the investigation, testing, monitoring, remediation, removal, and treatment of the contamination and pollution.

## COUNT IV

### Private Nuisance

111. Perdue incorporates by reference the allegations contained in paragraphs 1-75 as if alleged herein.

112. Johnson Controls has created a private nuisance by manufacturing, marketing, selling, distributing, installing, and discharging AFFF products in a manner that resulted in the persistent contamination of the Facility, the Property, and the Systems with PFAS, including the soil, sediment, surface water, and groundwater therein.

113. Johnson Controls, through its acts and omissions, has unreasonably and substantially interfered with Perdue's use and enjoyment of the Facility, the Property, and the Systems by, among other things, causing Perdue to:

a. Decommission its fire suppression system;

b. Cease utilizing its irrigation system;

c. Perform repeated testing at the Facility, on the Property, and on the Systems;

d. Remove and dispose of contaminated soils, dredge spoils, and sediment;

e. Install monitoring wells;

f. Delay installation of additional systems on the Property;

g. Install additional water treatment systems;

h. Suspend use of potable water resources onsite; and

i. Suspend certain processing operations and plans for expansion.

114. Johnson Controls knew, or should have known, that its manufacture, marketing, sale, distribution, installation, and release of AFFF products would result in the contamination of the Facility, the Property, and the Systems.

115. Any reasonable person would be annoyed and disturbed by the contamination and pollution of their property by AFFF containing PFAS or constituents breaking down into PFAS.

116. The damage and disruption to Perdue's use and enjoyment of the Facility, the Property, and the Systems outweighs any utility of the sale, installation, and release of Johnson Controls' AFFF products and outweighs any rights or interests of Johnson Controls, particularly where fluorine-free alternatives are, and have been, readily available for manufacture, distribution, sale, and installation by Johnson Controls.

117. Perdue has suffered an injury that is different in kind than that suffered by members of the public due to the PFAS contamination and/or pollution of its Facility, Property, and Systems and the resulting investigation, monitoring, remediation, and restoration efforts that Perdue has undertaken as a result of the contamination and/or pollution.

118. Perdue has incurred, is incurring, and will continue to incur significant costs to investigate, monitor, remediate, and restore the Facility, the Property, and the Systems and to remove the PFAS contamination caused by Johnson Controls' AFFF products, the installation and use of those products, and Johnson Controls' releases of AFFF products.

119. Johnson Controls is liable for creating the nuisance to the Facility, the Property, and the Systems. Perdue is entitled to all direct and consequential damages resulting from that nuisance. Johnson Controls is also liable for any other relief necessary to abate and remediate the nuisance including all short-term and long-term effects of the nuisance.

## COUNT V

### Trespass

120. Perdue incorporates by reference the allegations contained in paragraphs 1-75 as if alleged herein.

121. Perdue, at all relevant times, owned and was in possession of the Facility, the Property, and the Systems.

122. Johnson Controls intended to, and did repeatedly, supply and/or install AFFF products containing PFAS for use in the fire suppression system at the Facility, causing the fire suppression system to be contaminated with PFAS.

123. Johnson Controls negligently, recklessly, and/or intentionally, released, discharged, and/or spilled AFFF products, and/or caused AFFF products to be spilled at the Facility and onto the Property.

124. Johnson Controls' negligent, reckless, willful, and/or wanton actions and/or intentional refusals to act caused large quantities of AFFF containing PFAS or breaking down into PFAS to be discharged at the Facility and on the Property, including into the soils, sediment,

surface water, groundwater, and Systems. As a result, the Facility, the Property, and the Systems were contaminated with PFAS.

125. At all relevant times, Johnson Controls was aware, or should have been aware, that its actions would cause PFAS contamination at the Facility, on the Property, and in the Systems.

126. It was reasonably foreseeable that the introduction, supply, and installation of products containing PFAS would interfere with and damage Perdue's possessory interests over the Facility, the Property, and the Systems.

127. It was also reasonably foreseeable that the willful, intentional, reckless, and/or wanton discharge, release, and/or spilling of AFFF by Johnson Controls would interfere with Perdue's possessory interests over the Facility, the Property, and Systems, causing significant and continuing damage to all three.

128. Perdue did not consent, has not consented, and does not consent to the PFAS contamination and pollution caused by Johnson Controls' reckless, willful, and/or wanton actions and/or intentional refusals to act.

129. Johnson Controls knew, or should have known, it was not authorized to release, or cause the release of, AFFF at the Facility or to cause, or permit to be caused, PFAS contamination of the Facility, the Property, or the Systems.

130. Johnson Controls' voluntary actions and conscious failures to act resulted in immediate and continuous trespass at the Facility, on the Property, and in the Systems.

131. As a direct and proximate result of Johnson Controls' trespass, Perdue has incurred, is incurring, and will incur substantial costs associated with the investigation, remediation, restoration, removal, treatment, monitoring, and other costs and expenses related to the PFAS contamination of the Facility, the Property, and the Systems.

132. As a further direct and proximate result of Johnson Controls' trespasses, Perdue has sustained and will continue to sustain other substantial costs and expenses and damages, including damages for loss of use and enjoyment.

133. Perdue is entitled to compensatory damages for its injuries.

134. Third-Party Defendants are jointly and severally liable for all damages resulting from Johnson Controls' repeated and continuing trespass.

## COUNT VI

### Equitable Indemnification

135. Perdue incorporates by reference the allegations contained in paragraphs 1-75 as if alleged herein.

136. Johnson Controls is responsible for PFAS contamination at the Facility, on the Property, and in the Systems.

137. Johnson Controls—not Perdue—is an expert in the fire suppression industry.

138. Johnson Controls—not Perdue—designed, researched, developed, tested, manufactured, marketed, distributed, and sold its AFFF products for installation in the fire suppression system at the Facility.

139. In 2018 and 2019, Johnson Controls—not Perdue—repeatedly discharged, released, or spilled large quantities of AFFF concentrate and/or AFFF solution at the Facility, or repeatedly caused AFFF concentrate or AFFF solution to be discharged, released, or spilled at the Facility, causing PFAS contamination on the Property and in the Systems.

140. Perdue did not at any time cause, consent to, or approve any discharge, release, or spill of AFFF by Johnson Controls.

141. Johnson Controls' failure to develop and implement measures to prevent and/or quickly remedy the AFFF releases, discharges, spills, and/or leaks it caused exacerbated the PFAS contamination at the Facility, on the Property, and in the Systems.

142. Johnson Controls' refusal to contain, remove, and remediate the AFFF releases, discharges, spills, and/or leaks it caused exacerbated the PFAS contamination at the Facility, on the Property, and in the Systems.

143. Even though Perdue did not cause, consent to, or approve the release of AFFF by Johnson Controls, Perdue immediately initiated efforts to contain and collect the AFFF, including quickly hiring a contractor with expertise in collecting and disposing materials like AFFF.

144. The AFFF installed in, and released from, the fire suppression system at the Facility is the root cause of PFAS contamination on the Property and in the Systems.

145. The PFAS contamination on the Property and in the Systems is alleged to have migrated to other properties, including property of Plaintiffs and others in the putative class.

146. Perdue's liability arises from its status as the owner of the Facility, the Property, and Systems that were contaminated with PFAS due to Johnson Controls' repeated installation, releases, discharges, and/or spills of AFFF.

147. Perdue is entitled to indemnification from Johnson Controls for the expenses it has incurred, is incurring, and will continue to incur to respond to the MDE investigation, to comply with MDE directives, and to defend itself in the litigation, including the costs associated with the investigation, remediation, restoration, removal, treatment, monitoring, and other costs and expenses related to the PFAS contamination of the Facility, the Property, the Systems, and neighboring properties. Perdue is further entitled to indemnification for all costs incurred due to

litigation arising from, or related to, Johnson Controls' contamination of Perdue's Facility, Property, and/or Systems, including all attorneys' fees, expert fees, and costs.

148. In addition, Perdue is entitled to indemnification from Johnson Controls for fines levied (if any) upon Perdue, or judgments entered (if any) against Perdue for PFAS contamination arising from Johnson Controls' installations, releases, discharges, or spills of AFFF.

## COUNT VII

### Contribution

149. Perdue incorporates by reference the allegations contained in paragraphs 1-75 as if alleged herein.

150. To date, Perdue has shouldered more than its share of liabilities associated with the PFAS contamination at the Facility, on the Property, and in the Systems caused by Johnson Controls' discharges, releases, and/or spills of AFFF.

151. Johnson Controls has not contributed payment of any costs or liabilities created by its releases, discharges, and/or spills of AFFF at the Facility.

152. Johnson Controls summarily rejected Perdue's request for indemnification and contribution from Johnson Controls.

153. Perdue, for its part, has expended significant resources in response to the PFAS contamination caused by Johnson Controls' discharges, releases, and/or spills at the Facility, on the Property.

154. Perdue has incurred, is incurring, and will continue to incur substantial costs to respond to the MDE investigation, to comply with MDE directives, and to defend itself in the litigation, including the costs associated with the investigation, remediation, restoration, removal,

treatment, monitoring, and other costs and expenses related to the PFAS contamination of the Facility, the Property, the Systems, and neighboring properties.

155. Perdue is entitled to contribution from Johnson Controls for all its costs and expenses, including attorneys' fees, expert fees, court costs, fines levied upon Perdue (if any), and judgments entered against Perdue (if any).

**PUNITIVE DAMAGES**

156. Perdue incorporates by reference the allegations contained in paragraphs 1-75 as if alleged herein.

157. Upon information and belief, Johnson Controls engaged in willful, wanton, malicious, and/or reckless conduct causing injury to Perdue.

158. Johnson Controls' willful, wanton, malicious, and/or reckless conduct includes but is not limited to its conscious failure to take all reasonable measures to ensure its fire suppression products did not contain or break down into PFAS even though it knew the contamination risks its AFFF products posed.

159. Johnson Controls' willful, wanton, malicious, and/or reckless behavior further includes, but is not limited to, its repeated releases of PFAS-laden AFFF concentrate and/or foam solution at the Facility, onto the Property, and into the Systems, even though there was no fire or flammable liquid spill requiring the discharge of any fire suppression material, much less the PFAS-laden AFFF.

160. Johnson Controls committed each of the above-described acts and omissions knowingly, willfully, and in conscious disregard of the probable dangerous consequences of its conduct and its reasonably foreseeable impacts on Perdue. As a result, Perdue requests an award of punitive damages in an amount enough to punish Johnson Controls, that fairly reflects the

aggravating circumstances alleged herein, and that deters Johnson Controls from similar conduct in the future.

161. Third-Party Defendants are strictly, jointly, and severally liable for all such damages, and Perdue is entitled to recover all such damages and other relief as set forth below.

**PRAYER FOR RELIEF**

Perdue seeks judgment against all Third-Party Defendants, including but not limited to:

A. Compensatory damages in excess of $1,000,000 to Perdue according to proof arising from PFAS contamination and injury to the Facility, the Property, and the Systems, including, but not limited to past and future:

1. Loss of use of the Facility, Property, and Systems;
2. Diminished value of the Facility, the Property, and the Systems;
3. Costs of investigations;
4. Costs of testing and monitoring;
5. Costs of installing monitoring wells;
6. Costs of installing PFAS filtration systems on the Property;
7. Costs of providing purchasing and/or providing potable water at the Property;
8. Costs of remediating, removing, and/or disposing of PFAS on the Property, including the groundwater, surface water, drinking water supplies, soils, sediments, dredge spoils, and other natural resources and property;
9. Costs of decontaminating or replacing Systems, including the fire suppression system; and,
10. Other costs and damages proven at trial.

B. Indemnification and/or Contribution for, but not limited to:

1. Remediation of public waters, soils, and sediment;

2. Costs to install PFAS filtration systems on properties alleged by MDE or litigants to have been impacted by PFAS contamination migrating from the Property;

3. Costs to provide POET systems to owners of properties alleged by MDE or litigants to have been impacted by PFAS contamination migrating from the Property;

4. Costs to perform testing and monitoring and to investigate PFAS contamination on properties alleged by MDE or litigants to have been impacted by PFAS contamination migrating from the Property;

5. Fines levied upon Perdue (if any) arising from PFAS contamination resulting from Johnson Controls' releases, discharges, or spills of AFFF on the Property;

6. Judgments (if any) against Perdue for alleged damages arising from PFAS contamination migrating from the Property;

C. Punitive Damages;

D. Costs (including reasonable attorneys' fees, expert fees, court costs, and other expenses) related to Perdue's response to the MDE investigation and any litigation involving claims of PFAS contamination migrating from the Property;

E. Pre-judgment and post-judgment interest on all monies awarded, as permitted by law; and,

F. Any other and further relief the Court deems just, proper, and equitable.

**JURY DEMAND**

Perdue respectfully requests trial by jury on all claims.

Dated: May 8, 2026

By: */s/* ____________________

**VENABLE LLP**
J. Douglas Baldridge (Federal Bar No. 11023)
600 Massachusetts Avenue, N.W.
Washington, DC 20001
(202) 344-4703 (phone)
(202) 344-8300 (fax)
jbaldridge@venable.com

Elizabeth C. Rinehart (Federal Bar No. 19638)
Catherine G. Ottenritter (Federal Bar No. 20941)
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400 (phone)
(410) 244-7742 (fax)
lcrinehart@venable.com
cgottenritter@venable.com

*Counsel for Defendants*