# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

RACHEL M. CHANEY, *et al.*,

Plaintiffs,

v.

PERDUE FARMS INC., *et al.*,

Defendants.

PERDUE FARMS INC., FPP BUSINESS SERVICES, INC. d/b/a PERDUE FARMS INC., PERDUE AGRIBUSINESS LLC, PERDUE AGRIBUSINESS INCORPORATED d/b/a PERDUE AGRIBUSINESS LLC, PERDUE AGRIBUSINESS GRAIN LLC d/b/a PERDUE AGRIBUSINESS LLC, PERDUE FOODS LLC, and PERDUE FOODS INCORPORATED d/b/a PERDUE FOODS LLC,

Third-Party Plaintiffs,

v.

3M Company
3M Center
Saint Paul, Minnesota 55144

Third-Party Defendant.

Civil Action No. 1:24-cv-02975

JURY TRIAL DEMANDED

**<u>PERDUE'S THIRD-PARTY COMPLAINT AGAINST 3M COMPANY</u>**

Defendants and Third-Party Plaintiffs Perdue Farms Inc., FPP Business Services, Inc. d/b/a Perdue Farms Inc., Perdue AgriBusiness LLC, Perdue AgriBusiness Incorporated d/b/a Perdue AgriBusiness LLC, Perdue AgriBusiness Grain LLC d/b/a Perdue AgriBusiness LLC, Perdue

Foods LLC, and Perdue Foods Incorporated d/b/a Perdue Foods LLC (collectively, "Perdue")[1] bring the following Complaint against 3M Company ("3M"), and state:

## INTRODUCTION

1. Founded in Maryland more than 100 years ago, Perdue is a family-owned company that supplies agricultural products and services. Among its products are soybeans, which it sells "as is" or processes into soybean meal (for animal feed) or soybean oil (for cooking and industrial use).

2. Perdue processes and extracts soybean oil at a facility it owns and operates in Salisbury, Maryland (the "Salisbury Facility"). Because extracting soybean oil involves hexane, the Salisbury Facility must have a fire suppression system designed for fires that involve flammable or combustible liquids and gases (known as Class B fires).

3. The fire suppression system Perdue used at the Salisbury Facility was engineered to facilitate the swift delivery of firefighting foam combined with water to designated areas within the soybean extraction facility where hexane is present.

4. Starting in 1986, the Salisbury Facility's fire suppression system used aqueous film-forming foam products ("AFFF") manufactured by 3M, including FC-203CE and FC-783F ("3M AFFF"). Unfortunately, and unbeknownst to Perdue at the time, 3M AFFF contained per- and polyfluoroalkyl substances ("PFAS").

[1] Perdue AgriBusiness Grain LLC, FPP Business Services Inc., Perdue AgriBusiness Incorporated, and Perdue Foods Incorporated no longer exist as separately cognizable entities but are named as Third-Party Plaintiffs in an abundance of caution.

5. PFAS are synthetic chemical compounds that, though known to 3M for decades, have since become publicly known to be persistent and accumulative, and not biodegradable. They are also highly mobile once released into the environment—as was their intended use in fire suppression systems.

6. 3M possessed knowledge as early as the 1960s that its AFFF products would release PFAS into the environment when used as intended and directed. But 3M did not inform or warn Perdue of the presence or dangers of PFAS in its AFFF.

7. Perdue now knows all too well about PFAS. In 2023, Maryland Department of Environment ("MDE") testing detected PFAS in the groundwater at the Salisbury Facility. Extensive investigation, mitigation, and remediation activities conducted in connection with MDE's investigation—but at Perdue's expense—followed. As did litigation, including the underlying putative class action by Salisbury residents ("Plaintiffs") to hold Perdue liable for any PFAS contamination from the Salisbury Facility.

8. But it is 3M, not Perdue, who should shoulder the responsibility for contamination attributable to 3M AFFF's PFAS. Indeed, the investigation has determined that the presence of PFAS in the environment at the Salisbury Facility is consistent with the use of AFFF—including the very AFFF designed, manufactured, marketed, sold, and distributed by 3M.

9. Not only should 3M bear the cost of any liability owed to Plaintiffs, 3M has directly harmed Perdue as well. Perdue has incurred, and expects to further incur, significant investigation, monitoring, and remediation costs for the Salisbury Facility and neighboring properties to mitigate 3M AFFF PFAS.

10. While Perdue denies that it is liable for any injury or damage asserted in this action, or other litigations or investigations, Perdue brings this third-party action to seek indemnification and/or contribution from 3M in the event of a finding of liability against Perdue in this case, a related lawsuit in the District of Maryland, or any claim predicated on PFAS contamination originating from the Salisbury Facility. Perdue also seek damages for the harm done to its property and the cost, both incurred and to be incurred, of investigating, monitoring, and remediating PFAS contamination caused by 3M AFFF.

**PARTIES**

11. Perdue Farms Inc. is a Maryland corporation with its principal place of business at 31149 Old Ocean City Road, Salisbury, Maryland 21804.

12. FPP Business Services Inc. d/b/a Perdue Farms Inc. was a Maryland corporation with its principal place of business at 31149 Old Ocean City Road, Salisbury, Maryland 21804.

13. Perdue AgriBusiness LLC is a Maryland limited liability company with its principal place of business at 31149 Old Ocean City Road, Salisbury, Maryland 21804. It is wholly owned by Perdue Farms Inc.

14. Perdue AgriBusiness Incorporated d/b/a Perdue AgriBusiness LLC was a Maryland corporation with its principal place of business at 31149 Old Ocean City Road, Salisbury, Maryland 21804.

15. Perdue AgriBusiness Grain LLC d/b/a Perdue AgriBusiness LLC was a Maryland limited liability company with its principal place of business at 31149 Old Ocean City Road, Salisbury, Maryland 21804.

16. Perdue Foods LLC is a Maryland limited liability company with its principal place of business at 31149 Old Ocean City Road, Salisbury, Maryland 21804. It is wholly owned by Perdue Farms Inc.

17. Perdue Foods Incorporated d/b/a Perdue Foods LLC was a Maryland corporation with its principal place of business at P.O. Box 1537, Salisbury, Maryland 21801.

18. Third-Party Defendant 3M Company is a Delaware corporation with its principal place of business at 3M Center, Saint Paul, Minnesota 55144. 3M manufactured, marketed, sold, and distributed AFFF that was used in Maryland.

## JURISDICTION AND VENUE

19. Jurisdiction in this Court is proper under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. This Court also has jurisdiction pursuant to 28 U.S.C. § 1367 because the claims contained herein are sufficiently related to Plaintiffs' original claims such that they are part of the same case or controversy under Article III of the United States Constitution.

20. This Court has personal jurisdiction over 3M because it transacts business in Maryland, contracts to supply goods in Maryland, caused tortious injury in Maryland, engages in persistent courses of conduct in Maryland, and derives substantial revenue from manufactured goods or products used or consumed in Maryland.

21. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in Maryland and the resulting damages, including property contamination, are found in Maryland.

## FACTUAL BACKGROUND

### A. Perdue's Salisbury Facility & AFFF Fire Suppression System

22. The Salisbury Facility consists of approximately 294 acres and includes a soybean crush plant, a soybean extraction plant, a soybean oil refinery, two hatcheries, a feed mill, a boiler house, grain receiving and storage facilities, a truck fleet garage, and related support facilities and operations.

23. The soybean extraction plant at the Salisbury Facility uses hexane as a solvent in the soybean oil extraction process. Because hexane is a flammable aliphatic hydrocarbon, the extraction plant had an AFFF fire suppression system, which was more effective against hydrocarbon fire than a water-only system.[2]

24. When triggered, the AFFF fire suppression system would release AFFF from overhead spray nozzles onto the equipment and ground below to quickly extinguish fire and prevent reignition.

25. The original AFFF fire suppression system was installed in 1986. It featured a 900-gallon foam bladder tank manufactured by Arrow Tank & Engineering Co. and contained 3M AFFF FC-203CE. In later years, the system utilized other AFFF formulations, including 3M FC-783F.

26. At all times relevant to this Complaint, Perdue used AFFF as it was intended to be used—as a fire suppression agent.

**B. MDE's Discovery of PFAS at the Salisbury Facility**

27. In 2023, an MDE analysis indicated that water samples collected from the Salisbury Facility contained elevated levels of PFAS, with perfluorooctane sulfonic acid ("PFOS") detected at the highest concentrations.

28. PFOS (along with its salts and structural isomers) is one of two PFAS designated by the United States Environmental Protection Agency ("EPA") as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act. PFOS is also a varietal of PFAS associated with certain 3M AFFF products—including FC-203CE and FC-783F.

[2] The AFFF fire suppression system was decommissioned and replaced with a new Synthetic Fluorine Free Foam fire suppression system in 2025.

29. Over the ensuing months and years, Perdue engaged in extensive sampling activities and PFAS monitoring and testing at the direction of MDE.

30. On September 12, 2024, MDE issued a letter designating Perdue as a responsible person (as defined by Section 7-201 of the Environment Article, Maryland Code) based on PFAS detected in groundwater at the western edge of the Salisbury Facility and in well and surface-water samples collected to the west of the facility.

31. Perdue next engaged an independent testing contractor, Langan Engineering and Environmental Services ("Langan"), to conduct an investigation equivalent to a Phase I Environmental Site Assessment "to determine all potential sources of PFAS in soil and groundwater at the Site."

**C. Langan's Findings on the Source of PFAS in the Salisbury Facility**

32. At great expense to Perdue, Langan investigated the nature and extent of the PFAS contamination. Its investigation involved testing soil, sediment, and water (both ground and surface) at the Salisbury Facility, as well as the installation of monitoring wells.

33. Langan's investigation ultimately identified AFFF used in the extraction plant's former fire suppression system as the sole site-related source of regulated PFAS detected in environmental media (soil, groundwater, surface water, and sediment) at the Salisbury Facility.

34. Only the former fire suppression system in the extraction plant used AFFF; the other systems at the facility historically used water deluge.

35. As part of its investigation, Langan designated areas of interest ("AOIs") for PFAS at the Salisbury Facility and assessed the presence and extent of PFAS in the environmental media in those areas.

36. Of the AOIs, the highest concentrations of PFAS in soil were detected in the area that previously contained the former AFFF fire suppression system ("AOI-1"). Indeed, the PFAS readings in AOI-1 were orders of magnitude higher—typically more than 100 times higher—than in any of the other AOIs.

37. The specific PFAS that were detected at the highest concentrations in the soil in AOI-1 included PFOS, perfluorohexanesulfonic acid ("PFHxS"), and perfluorooctanoic acid ("PFOA"). Those same three PFAS were also the most prevalent, meaning they were detected most frequently at concentrations above the EPA's Industrial Regional Screening Levels, across all the AOIs.

38. AOI-1 also had the highest concentrations of PFAS observed in groundwater in the Salisbury Facility. Of the detected PFAS, PFOS, PFHxS, and PFOA were most frequently detected at concentrations above the EPA's Maximum Contaminant Levels.

**D. Perdue's Use of 3M AFFF**

39. Perdue used 3M AFFF in the fire suppression system for decades, beginning in 1986.

40. Like all AFFF used during the life of the former fire suppression system, 3M AFFF was designed and intended to mix with water and deploy as firefighting foam to deluge the areas of the extraction facility where hexane was stored and used.

41. Also like the other AFFF used during the life of the former fire suppression system, 3M AFFF Perdue used contained PFAS.

42. However, unlike the AFFF formulations used more recently, 3M AFFF products, including FC-203CE and FC-783F, were formulated with perfluoroalkyl sulfonates, including PFOS and PFHxS.

43. The presence of PFOS and PFHxS in the soil and groundwater samples collected at the Salisbury Facility is consistent with the presence of 3M AFFF-originated PFAS.

**E. 3M's Failure To Warn Perdue of PFAS**

44. 3M did not advise Perdue of the risks associated with PFAS contained in 3M AFFF used in the former fire suppression system.

45. 3M knew about the hazardous properties of PFAS as early as 1958, but failed to provide adequate warnings about its PFAS-containing products—including AFFF.

46. For example, the specification sheet for 3M AFFF FC-783 stated the following: "Based on test results, 3M Brand AFFF is biodegradable, low in toxicity and can be treated in biological treatment systems. In its concentrate form, 3M Brand AFFF was found to be a slight eye and skin irritant, but as a foam solution, there are no noticeable negative effects. Tests and actual use situations have shown that animal and aquatic life are not adversely affected."

47. Through its acts and/or omissions, 3M concealed and/or withheld information that would have alerted users to the properties of AFFF and PFAS contained therein, and the environmental contamination that could result from those properties.

48. Despite its knowledge regarding the properties of PFAS, 3M failed to discourage Perdue from continuing to use its AFFF products in fire suppression systems.

49. As a result of 3M's actions and/or omissions, PFAS have been detected at and around the Salisbury Facility, which Perdue is now working with MDE to investigate, monitor, and remediate.

50. Despite its knowledge that 3M AFFF products were likely to cause environmental contamination, 3M failed to take appropriate precautionary measures to prevent or mitigate contamination caused by its products.

**F. Perdue Has Engaged in Extensive—and Costly—Efforts To Remediate PFAS**

51. Since the discovery of PFAS, Perdue has expended significant resources to investigate, monitor, and remediate PFAS both on its own property and in the surrounding community.

52. In addition to the extensive investigation of the Salisbury Facility discussed above, Perdue notified its neighbors of potential PFAS contamination and offered to test their wells. Perdue has since tested hundreds of wells and installed point-of-entry-treatment systems to remediate PFAS contamination in drinking water.

53. On site, Perdue has taken several steps designed to reduce future risk, including decommissioning its AFFF fire suppression system and replacing it with a new system that uses fluorine-free foam.

54. Perdue's efforts to investigate, mitigate, and remediate PFAS are ongoing and will continue to require substantial resources into the future.

**G. Neighbors and Residents Have Already Sued Perdue**

55. Despite Perdue's substantial remediation efforts, and while its investigation was still underway, litigants filed actions seeking to hold Perdue liable for any possible PFAS-related harms they might or have allegedly incurred.

56. This purported class action, which alleges that PFAS originating from the Salisbury Facility contaminated neighboring property and wells, was filed against Perdue in October 2024.

57. Plaintiffs claim that PFAS contamination at the Salisbury Facility resulted in, or will eventually result in, damage to their properties or health.[3] The remedies sought run the gamut from injunctive relief (*e.g.*, requiring Perdue to provide medical monitoring for putative class

[3] The Court dismissed Plaintiffs' personal injury claims without prejudice. *See* ECF No. 44.

members), to monetary damages (*e.g.*, for purported loss of property value), to the costs and fees stemming from the litigation.

58. Another lawsuit filed against Perdue, *Jones v. Perdue Farms, Inc.*, No. 1:25-cv-02455 (D. Md.), alleges that PFAS-contamination at the Salisbury Facility has harmed the water used by those plaintiffs, the general recreational, aesthetic, and commercial interests of local citizens, and regional aquatic life. The remedies sought stem from Perdue's purported violations of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, and include declaratory and injunctive relief, civil penalties, and attorneys and expert costs and fees.

59. Perdue has denied liability in these matters and will continue to defend itself against the claims made in each case. To the extent Perdue is found liable for any injury or damage asserted by Plaintiffs in this action, any such injury or damage caused by 3M's conduct should be 3M's responsibility.

**COUNT I – STRICT PRODUCTS LIABILITY BASED ON DEFECTIVE DESIGN**

60. Perdue incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Third-Party Complaint as though fully restated herein.

61. 3M designed, manufactured, marketed, sold, and distributed 3M AFFF.

62. 3M AFFF was in a defective condition and unreasonably dangerous when designed, manufactured, marketed, sold, and distributed to the public by 3M. Namely, it contained of perfluoroalkyl sulfonates including PFOS and PFHxS that are highly mobile in water, persistent, and resistant to biodegradation.

63. 3M AFFF reached Perdue, its intended user, as expected and without substantial change in condition as designed, manufactured, marketed, sold, and distributed by 3M.

64. As a direct and proximate result of 3M AFFF's defective and unreasonably dangerous condition, Perdue has suffered damages arising from PFAS contamination in and

around the Salisbury Facility, including costs incurred and to be incurred in responding to the contamination. Such costs include, but are not limited to, past and future costs of investigation, monitoring, and remediation, and attorneys' fees and costs to be determined at trial.

**COUNT II – STRICT PRODUCTS LIABILITY BASED ON FAILURE TO WARN**

65. Perdue incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Third-Party Complaint as though fully restated herein.

66. 3M AFFF had an inherent and hidden danger when it was designed, manufactured, marketed, sold, and distributed to the public by 3M. Namely, it contained perfluoroalkyl sulfonates including PFOS and PFHxS that are highly mobile in water, persistent, and resistant to biodegradation.

67. The inherent and hidden danger of 3M AFFF was neither obvious nor known to Perdue, and it was not a matter of common knowledge to other users of PFAS-containing AFFF.

68. 3M knew, or in the exercise of reasonable care should have known, that 3M AFFF would release PFAS into the environment, even when used as intended and instructed.

69. 3M marketed and sold its AFFF knowing that it would be used, stored, and maintained in fire suppression systems like the one at the Salisbury Facility, which could cause PFAS to be released into the environment.

70. Based on its knowledge of PFAS and the anticipated use, storage, and maintenance of 3M AFFF at facilities like the Salisbury Facility, 3M knew or should have known that 3M AFFF, when released, might result in contamination that would need to be investigated and remediated.

71. 3M failed to warn Perdue of the properties of 3M AFFF and the PFAS contained therein and the effect of those properties on its use and disposal, despite being in a superior and unique position to provide that warning as the manufacturer and seller of the product. This failure

included, among other things, failing to warn users that standard treatment and disposal processes were insufficient for PFAS.

72. To the extent 3M learned of any of the properties after 3M AFFF entered the stream of commerce, 3M also failed to provide post-sale warnings to Perdue concerning those properties.

73. As a direct and proximate result of 3M's failure to warn, Perdue has suffered damages arising from PFAS contamination in and around the Salisbury Facility, including costs incurred and to be incurred in responding to the contamination. Such costs include, but are not limited to, past and future costs of investigation, monitoring, and remediation, and attorneys' fees and costs to be determined at trial.

**COUNT III – NEGLIGENCE**

74. Perdue incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Third-Party Complaint as though fully restated herein.

75. As the manufacturer and seller of PFAS-containing AFFF, 3M owed a duty to Perdue to exercise reasonable care in the formulation, manufacture, sale, labeling, and marketing of its AFFF.

76. 3M knew, or in the exercise of reasonable care should have known, that its AFFF would release PFAS into the environment, even when used as intended and instructed.

77. 3M marketed and sold AFFF knowing that it would be used, stored, and maintained in industrial facilities like the Salisbury Facility in ways that could cause PFAS to be released into the environment.

78. Given 3M's knowledge of PFAS and the anticipated use, storage, and maintenance of AFFF at facilities like the Salisbury Facility, it was foreseeable to 3M that PFAS could be released and contaminate the environment in and around the facility, including soil, groundwater, surface water, and sediment.

79. Accordingly, 3M knew or should have known that end users required appropriate safety precautions, instructions, and warnings to prevent the release of PFAS into the surrounding environment.

80. As the manufacturer, 3M was in the best position to provide adequate precautions, instructions, and warnings regarding its AFFF.

81. 3M failed to provide adequate precautions, instructions, or warnings regarding the proper use, handling, and disposal of its AFFF, thereby permitting PFAS to contaminate the environment in and around the Salisbury Facility. This failure included, among other things, failing to warn users that standard treatment and disposal processes were insufficient for PFAS.

82. As a direct and proximate result of 3M's negligence, Perdue has suffered damages arising from PFAS contamination in and around the Salisbury Facility, including costs incurred and to be incurred in responding to the contamination. Such costs include, but are not limited to, past and future costs of investigation, monitoring, and remediation, and attorneys' fees and costs to be determined at trial.

## **COUNT IV – PRIVATE NUISANCE**

83. Perdue incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Third-Party Complaint as though fully restated herein.

84. 3M has created a private nuisance by designing, manufacturing, marketing, selling, and distributing 3M AFFF in a manner that caused PFAS contamination at the Salisbury Facility. The PFAS contamination has materially diminished the value of the Salisbury Facility and substantially and unreasonably interfered with Perdue's use and enjoyment of the facility.

85. As a result of the PFAS contamination, Perdue has had to, among others, perform repeated PFAS testing at the Salisbury Facility; remove and dispose of contaminated soils,

dredging spoils, and sediment; install monitoring wells to sample groundwater for PFAS; install additional water-treatment systems; and suspend the use of potable-water resources at the facility.

86. The interference with Perdue's property interest caused by the PFAS contamination would be offensive and inconvenient to an ordinary person, particularly given the persistence of PFAS in the environment and the extensive remediation required to address the contamination.

87. The harm to and interference with Perdue's use and enjoyment of the Salisbury Facility and the associated loss in value substantially outweigh any interest 3M may claim in designing, manufacturing, marketing, selling, and distributing 3M AFFF that contained PFOS and PFHxS, given the availability of alternative products.

88. As a direct and proximate result of the private nuisance caused by 3M, Perdue has suffered damages arising from PFAS contamination in and around the Salisbury Facility, including costs incurred and to be incurred in responding to the contamination. Such costs include, but are not limited to, past and future costs of investigation, monitoring, and remediation, and attorneys' fees and costs to be determined at trial.

**COUNT V – TRESPASS**

89. Perdue incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Third-Party Complaint as though fully restated herein.

90. Perdue owned and possessed the Salisbury Facility at all relevant times.

91. 3M interfered with Perdue's possessory interest in the Salisbury Facility by designing, manufacturing, marketing, selling, and distributing 3M AFFF in a manner that caused PFAS contamination at the Salisbury Facility, including its soil, groundwater, surface water, and sediment.

92. At no time during the relevant time period did Perdue consent to 3M's interference with its possessory interest in the Salisbury Facility through PFAS contamination. And 3M knew,

or should have known, that Perdue did not authorize it to release or cause the release of PFAS at the Salisbury Facility, or to cause, or permit to be caused, PFAS contamination of the facility.

93. As a direct and proximate result of 3M's trespass, Perdue has suffered damages arising from PFAS contamination in and around the Salisbury Facility, including costs incurred and to be incurred in responding to the contamination. Such costs include, but are not limited to, past and future costs of investigation, monitoring, and remediation, and attorneys' fees and costs to be determined at trial.

**COUNT VI – COMMON LAW INDEMNIFICATION**

94. Perdue incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Third-Party Complaint as though fully restated herein.

95. If Plaintiffs have sustained injuries and damages as alleged in their Complaint, then those injuries and damages, if any, were sustained as a result of the active negligence, private nuisance, trespass, and strict liability of 3M.

96. 3M designed, manufactured, marketed, sold, and distributed its AFFF, which was defective and unreasonably dangerous. 3M designed, manufactured, marketed, sold, and distributed 3M AFFF in a manner that caused PFAS contamination at the Salisbury Facility.

97. In addition, the danger posed by 3M AFFF was inherent and hidden. It was neither obvious nor known to Perdue that 3M AFFF would release chemical substances that are highly mobile in water, persistent, and resistant to biodegradation.

98. 3M knew or should have known of the properties of AFFF and the PFAS contained therein as early as the 1960s and at all times thereafter.

99. Notwithstanding the danger posed by its AFFF, 3M failed to warn users like Perdue of that danger or its effect on the use and disposal of the product.

100. As a direct and proximate cause of its active negligence, private nuisance, trespass, and strict liability, 3M has a duty to indemnify Perdue for any damages to Plaintiffs.

101. Perdue seeks indemnification for any damages or injuries caused by virtue of any and all statutory and common law duties and obligations breached by, and other liabilities of, 3M.

102. Perdue's entitlement to indemnification includes any liability owed to Plaintiffs or other litigants seeking to hold Perdue responsible for PFAS at the Salisbury Facility, as well as the costs and expenses Perdue has incurred or will incur for responding to the MDE investigation, complying with MDE directives, and otherwise defending itself in this litigation.

**COUNT VII – COMMON LAW CONTRIBUTION**

103. Perdue incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Third-Party Complaint as though fully restated herein.

104. If Plaintiffs have sustained injuries and damages as alleged in their Complaint, then those injuries and damages, if any, were sustained as a result of the direct negligence, private nuisance, trespass, and strict liability of 3M.

105. 3M designed, manufactured, marketed, sold, and distributed 3M AFFF, which was defective and unreasonably dangerous. 3M designed, manufactured, marketed, sold, and distributed 3M AFFF in a manner that caused PFAS contamination at the Salisbury Facility.

106. In addition, the danger posed by 3M AFFF was inherent and hidden. It was neither obvious nor known to Perdue that 3M AFFF would release chemical substances that are highly mobile in water, persistent, and resistant to biodegradation.

107. 3M knew or should have known of the properties of AFFF and the PFAS contained therein as early as the 1960s and at all times thereafter.

108. Notwithstanding the danger posed by its AFFF, 3M failed to warn users like Perdue of that danger or its effect on the use and disposal of the product.

109. As a direct and proximate cause of its direct negligence, private nuisance, trespass, and strict liability, 3M has a duty to contribute to any damages paid by Perdue to Plaintiffs.

110. Perdue seeks contribution for any damages or injuries caused by virtue of any and all statutory and common law duties and obligations breached by, and other liabilities of, 3M.

111. Perdue's entitlement to contribution includes any liability owed to Plaintiffs or other litigants seeking to hold Perdue responsible for PFAS at the Salisbury Facility, as well as the costs and expenses Perdue has incurred or will incur for responding to the MDE investigation, complying with MDE directives, and otherwise defending itself in this litigation.

**PUNITIVE DAMAGES**

112. Perdue incorporates by reference the allegations set forth in paragraphs 1 through 59 of this Third-Party Complaint as though fully restated herein.

113. Upon information and belief, 3M acted with actual malice.

114. 3M possessed actual knowledge of the defective condition and unreasonable dangerousness of 3M AFFF when it was designed and manufactured, and marketed, sold, and distributed to the public by 3M. Namely, 3M AFFF contained perfluoroalkyl sulfonates including PFOS and PFHxS that are highly mobile in water, persistent, and resistant to biodegradation. It was foreseeable to 3M that 3M AFFF, even if used as directed and intended, could cause PFAS to be released into the environment. 3M consciously or deliberately disregarded 3M AFFF's defect and the foreseeable harm that could result from that defect.

115. 3M AFFF had an inherent and hidden danger when it was designed and manufactured, and marketed, sold, and distributed to the public by 3M. Namely, 3M AFFF contained perfluoroalkyl sulfonates including PFOS and PFHxS that are highly mobile in water, persistent, and resistant to biodegradation. It was foreseeable to 3M that 3M AFFF, even if used as directed and intended, could cause PFAS to be released and contaminate the environment in

and surrounding its place of use. 3M consciously or deliberately disregarded 3M AFFF's inherent and hidden dangerous and the foreseeable harm that could result from that danger by not warning users of the properties of 3M AFFF and the PFAS contained therein and the effect of those properties on its use and disposal.

## PRAYER FOR RELIEF

WHEREFORE, Perdue requests judgment in its favor and against 3M as follows:

**A.** Awarding compensatory damages to pay for the costs incurred and to be incurred by Perdue for the investigation, monitoring, and remediation arising from PFAS contamination in and around the Salisbury Facility;

**B.** Awarding punitive and such other damages allowed by statute in an amount to be determined at trial;

**C.** Ordering 3M to indemnify, or alternatively, contribute to, any judgment entered against Perdue for the claims brought by Plaintiffs;

**D.** Awarding reasonable attorney's fees, costs, and other reasonable litigation expenses; and

**E.** Awarding such other and further relief at law and/or in equity that the Court deems appropriate.

## JURY DEMAND

Perdue respectfully requests trial by jury on all claims.

May 8, 2026

*/s/ Stephen J. Obermeier*
Stephen J. Obermeier (Federal Bar No. 31382)
Brandon J. Moss*
Frank Scaduto*
Lois S. Ahn*
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
Tel: (202) 719-7000
Fax: (202) 719-7049
sobermeier@wiley.law
bmoss@wiley.law
fscaduto@wiley.law
lahn@wiley.law

*Counsel for Defendants/Third-Party Plaintiffs*

**Pro hac vice* pending