**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RACHAEL M. CHANEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PERDUE FARMS INC., *et al.*,<br><br>Defendants. | Case No.: 1:24-cv-02975 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO TERMINATE THE STAY OF DEADLINES AND FOR SANCTIONS**

# Table of Contents


INTRODUCTION .......... 1

BACKGROUND .......... 4

I. The Parties Agreed to Mediation and Obtained a Stay of Case Deadlines .......... 4

II. While the Mediation-Related Stay Was in Effect, Perdue Sought Leave to File Third-Party Complaints .......... 6

III. Following the Filing of the Motions for Leave, Perdue Reaffirmed That It Would Proceed with Mediation .......... 7

IV. Plaintiffs Spent Substantial Resources Preparing and Submitting Their Mediation Statement .......... 8

V. Perdue Cancelled the Mediation Before Its Own Statement Is Due .......... 9

LEGAL STANDARD .......... 11

ARGUMENT .......... 12

I. Perdue's Conduct Constituted Bad-Faith Abuse of the Mediation Process and the Court's Stay of Deadlines .......... 12

A. Perdue Obtained and Extended the Stay of Deadlines for the Purpose of Participating in Mediation .......... 13

B. Perdue Used the Mediation-Related Stay to Pursue Third-Party Claims Based on a Long-Known AFFF Source Theory .......... 13

C. After Repeatedly Confirming That Mediation Would Proceed, Perdue Cancelled the Mediation Before Its Own Submission Was Due .......... 14

II. Plaintiffs Suffered Substantial Prejudice as a Result of Perdue's Conduct .......... 15

III. The Court Should Exercise Its Inherent Authority to Award Appropriate Relief .......... 17

CONCLUSION .......... 18

## INTRODUCTION

This putative class action arises from allegations that per- and polyfluoroalkyl substances ("PFAS") emanating from Perdue's Agribusiness Facility in Salisbury, Maryland contaminated surrounding groundwater, private wells, and residential properties. While the parties were conducting discovery under an agreed-upon Scheduling Order, they agreed to explore whether the case could be resolved through mediation before the Honorable William G. Connelly (Ret.).

To facilitate that effort, the parties jointly requested, and obtained, two stays of case deadlines. The first stay allowed the parties to engage Judge Connelly to undertake a preliminary mediation vetting process solely intended to determine the viability of mediation. The second stay was obtained after Judge Connelly examined the viability of mediation and the parties had agreed to participate in a three-day mediation scheduled for July 27 through July 29, 2026. In requesting that extended stay, the parties expressly represented that they sought the suspension of deadlines "[t]o focus on mediation." ECF 62.

Four days after obtaining that extension, Perdue[1] filed motions for leave to add Johnson Controls and 3M as third-party defendants, notifying Plaintiffs[2] only one day prior to filing that Defendants were contemplating such an action. Those motions sought to significantly expand the scope of the litigation and concerned a potential source of PFAS contamination that Perdue had been aware of since at least November 2024.

The filing of the motions immediately raised concerns regarding whether the scheduled mediation remained viable. Plaintiffs promptly sought clarification from Perdue's counsel and

---

[1] As used in this Memorandum, "Perdue" and "Defendants" refer collectively to the Defendants in this matter, Perdue Farms Inc., FPP Business Services Inc. d/b/a Perdue Farms Inc, Perdue Agribusiness LLC, Perdue Agribusiness Incorporated d/b/a Perdue Agribusiness LLC, Perdue Agribusiness Grain LLC d/b/a Perdue Agribusiness LLC, Perdue Foods LLC, and Perdue Foods Incorporated d/b/a Perdue Foods LLC.

[2] As used in this Memorandum, "Plaintiffs" refers collectively to Rachel M. Chaney, Doug C. Davis, Julie M. Davis, Gary W. Doss, and Rebecca R. Doss.

participated in a meet-and-confer concerning the impact of the motions on the mediation process. During that discussion, Perdue's counsel represented that mediation remained viable, would still be beneficial and productive, and would proceed as scheduled. Plaintiffs thereafter continued preparing for the mediation. Plaintiffs also raised their concerns through Judge Connelly and provided him with a detailed list of questions regarding Perdue's intentions for the upcoming mediation. Judge Connelly conveyed those questions to Perdue's counsel and subsequently communicated Perdue's responses to Plaintiffs. Those responses likewise confirmed that Perdue intended to participate in the scheduled mediation and negotiate the case notwithstanding the pending motions for leave.

Plaintiffs relied on Perdue's representations that mediation remained viable, and continued to prepare for the mediation, incurring substantial attorney, consultant, and expert expenses. On June 29, 2026, Plaintiffs submitted a comprehensive 22-page mediation statement in accordance with the parties' agreed-upon schedule, supported by nearly 800 pages of attached reports from multiple experts. Plaintiffs disclosed substantial information for settlement purposes, including information concerning their liability and damages theories, expert analyses, and alleged personal injuries among members of the putative class. Those efforts were undertaken with the expectation that the parties would exchange mediation statements and engage in a meaningful effort to resolve the litigation.

Instead, on July 11, 2026, approximately two weeks before the mediation was scheduled to begin and two days before Perdue's own mediation statement was due, Perdue unilaterally cancelled the mediation. None of the information contained in Plaintiffs' mediation statement was materially different from the information contained in Plaintiffs' pre-mediation vetting statement.

Yet Perdue abandoned the mediation despite possessing the same information for months and after repeatedly representing that mediation remained viable and would proceed as scheduled.

By the time Perdue unilaterally cancelled mediation, it had already obtained the benefit of two mediation-related stays of case deadlines amounting to 137 days, including the opportunity to pursue its motions for leave to add third-party defendants while those deadlines remained suspended. Perdue had also obtained the benefit of Plaintiffs' comprehensive mediation submission, which set forth Plaintiffs' theories of liability and damages and included extensive supporting expert analysis.

Plaintiffs, meanwhile, had already incurred approximately $270,000 in expert and consultant fees in preparing for mediation and developing the expert analyses accompanying the mediation statement. Plaintiffs also devoted more than 500 hours of attorney time and more than 900 hours of paralegal time to preparing for the mediation and completing their mediation statement. Even using conservative hourly billing rates, the value of the attorney and paralegal work alone exceeds $400,000. Plaintiffs seek reimbursement of only a fraction of those expenditures, specifically $50,000 for attorney and paralegal time and $50,000 for expert and consultant fees.

The chronology of events supports the conclusion that Perdue never intended to mediate this case in good faith. Perdue simply abused the stay to delay the underlying case, attempt to add third-party defendants, cause the Plaintiffs to spend significant monies, expend substantial resources, and provide a comprehensive overview of their view of liability and damages along with the underlying factual and expert support for their claims. Plaintiffs respectfully submit that Perdue's conduct constitutes a bad-faith abuse of the mediation process and the Court's stay of deadlines. Plaintiffs therefore request that the Court exercise its inherent authority to award

Plaintiffs the fees and costs reasonably incurred in preparing for the cancelled mediation, terminate the existing stay of deadlines, order Defendants to complete document production responsive to Plaintiffs' October 10, 2025, Requests for Production within fourteen days, issue a revised scheduling order, and grant such further relief as the Court deems appropriate.

## BACKGROUND

### I. The Parties Agreed to Mediation and Obtained a Stay of Case Deadlines

Following this Court's August 12, 2025, ruling on Perdue's Motion to Dismiss or Stay, ECF 44, the parties began conducting discovery pursuant to the Scheduling Order jointly proposed by the parties and entered by the Court, *see* ECF 53. Among other deadlines, the Scheduling Order required substantial completion of document production by March 6, 2026, established May 1, 2026, as the deadline for moving to join additional parties or amend the pleadings, and required substantial completion of fact discovery by June 5, 2026. *Id.*

On October 10, 2025, Plaintiffs served their first set of interrogatories and requests for production on Defendants. Defendants served responses on November 10, 2025, and made preliminary document productions on February 27 and March 5, 2026. A significant portion of the documents produced by Perdue had already been posted online by Perdue or obtained from MDE and Plaintiffs believe that the productions made to date represent only a small fraction of the documents responsive to Plaintiffs' discovery requests. Although disputes remained concerning the adequacy of certain responses and the scope of Defendants' production obligations, the parties' Scheduling Order required substantial completion of document production by March 6, 2026. ECF 53. When the parties agreed to suspend deadlines in March 2026 to pursue mediation, Plaintiffs understood that Defendants had paused further document production that otherwise would have been forthcoming absent the stay.

That stay was the product of mediation discussions that began in early March 2026 while discovery remained ongoing under the Scheduling Order. Before committing to a formal mediation session, the parties agreed to engage Judge Connelly to conduct a preliminary assessment of their respective positions and determine whether a formal mediation would likely be productive. To permit the parties to focus on that process, they jointly requested a 45-day stay of all case deadlines. ECF 60. In support of that request, the parties represented to the Court that they had "agreed in principle to explore mediation to resolve this dispute" and wished to "confer with a mediator to determine if a more formal mediation session is advisable." *Id.* The Court granted the request. ECF 61.

As part of the pre-mediation vetting process, both sides agreed to submit pre-mediation vetting statements to Judge Connelly. On April 13, 2026, Plaintiffs shared their pre-mediation vetting statement with Judge Connelly and opposing counsel. Plaintiffs' pre-mediation vetting statement included Plaintiffs' initial calculation of the range of total damages in this case broken down into categories. At no point during the pre-mediation process did Defendants say they would be filing motions seeking to add third-party defendants. Following the submission of pre-mediation vetting statements to Judge Connelly, the parties concluded that mediation was viable and agreed to proceed with a three-day mediation scheduled for July 27 through July 29, 2026. The parties further agreed to exchange mediation statements in advance of the mediation, with Plaintiffs' statement due June 29, 2026, and Perdue's statement due July 13, 2026. The parties jointly advised the Court that they had "agreed to schedule a multi-day mediation" and requested that all case deadlines remain stayed through August 3, 2026 "[t]o focus on mediation." ECF 62. The parties further represented that if mediation proved unsuccessful they would thereafter propose a modified scheduling order governing the continued litigation. *Id.* The Court granted that request. ECF 63.

### II. While the Mediation-Related Stay Was in Effect, Perdue Sought Leave to File Third-Party Complaints

On May 8, 2026, four days after the parties jointly requested a three-month extension of the mediation-related stay of deadlines, Perdue sought leave to file third-party complaints against Johnson Controls and 3M. ECF 64, 71. Perdue had not previously advised Plaintiffs that it intended to seek leave to add Johnson Controls or 3M as third-party defendants. Instead, Perdue first notified Plaintiffs that Defendants were contemplating such an action on May 7, 2026, one day before filing the motions.

Perdue's motions sought to add Johnson Controls and 3M as third-party defendants based on their alleged roles in supplying aqueous film-forming foam ("AFFF") products and related services at the Agribusiness Facility. *See* ECF 64, 71-1. Plaintiffs opposed both motions, arguing that the proposed third-party complaints included independent claims belonging to Perdue, would substantially expand the scope of the litigation, and would delay and complicate Plaintiffs' prosecution of this already complex putative class action. *See* ECF 87-1, 88-1.

The timing of Perdue's motions was particularly significant. Perdue had identified AFFF as a known source of PFAS at the Agribusiness Facility by November 2024, when this action had been pending for less than seven weeks. *See* ECF 87-1 at 13-14. Yet Perdue waited until May 8, 2026, or 18 months later, to seek leave to assert third-party claims. By that time, the parties had completed the pre-mediation vetting process to confirm the viability of mediation, agreed to a three-day mediation, and jointly obtained a continuation of the stay of case deadlines through August 3, 2026, for the stated purpose of focusing on mediation. Perdue filed its motions only four days after obtaining that extension. The motions also concerned the addition of new parties, which under the parties' agreed Scheduling Order ordinarily would have been governed by a May 1, 2026, deadline that had been suspended as part of the mediation-related stay. *See* ECF 53 at 2.

Perdue maintained that its proposed third-party claims would assist the mediation by ensuring that the parties possessed all current and material information concerning the case. *See* ECF 64 at 4. Plaintiffs responded that the motions did not merely provide information relevant to settlement. They sought to add new parties, claims, defenses, and disputes concerning AFFF products, Perdue's own alleged damages, its regulatory response costs, and its claimed entitlement to punitive damages. ECF 87-1 at 15. Plaintiffs further explained that the proposed impleader created uncertainty regarding whether the scheduled mediation could proceed meaningfully without the proposed third-party defendants. *Id.* at 15–16. Plaintiffs therefore requested that the Court deny leave or, at minimum, defer any decision that would expand the case until after the scheduled mediation. *Id.*[3]

### III. Following the Filing of the Motions for Leave, Perdue Reaffirmed That It Would Proceed with Mediation

After Perdue filed its motions for leave, Plaintiffs questioned whether the scheduled mediation would proceed as planned. Plaintiffs promptly sought clarification from Perdue's counsel and participated in a meet-and-confer on May 11, 2026, concerning the impact of the motions on the mediation process. During that discussion, Perdue's counsel represented that mediation remained viable, would still be beneficial and productive, and would proceed as scheduled. Plaintiffs additionally raised similar concerns through Judge Connelly regarding whether Perdue remained committed to participating in the mediation and provided him with a detailed list of questions regarding Perdue's intentions for the upcoming mediation. Judge Connelly conveyed those questions to Perdue's counsel and subsequently communicated Perdue's responses to Plaintiffs. Those responses likewise confirmed that Perdue remained committed to

[3] Both motions for leave to file third-party complaints remain pending before the Court as of the time of the filing of this motion.

participating in the scheduled mediation and negotiating a resolution of the case notwithstanding the pending motions for leave.[4]

The mediation therefore remained scheduled for July 27 through July 29, 2026. In reliance on Perdue's repeated and continued commitment to the scheduled mediation, Plaintiffs continued preparing their mediation statement and supporting materials.

### IV. Plaintiffs Spent Substantial Resources Preparing and Submitting Their Mediation Statement

Following confirmation that the mediation would proceed as scheduled, Plaintiffs undertook substantial efforts to prepare for the July 27 through July 29, 2026, mediation. In accordance with the parties' agreed schedule, Plaintiffs prepared and submitted a comprehensive mediation statement on June 29, 2026. The mediation statement was the product of extensive work performed by Plaintiffs' counsel, paralegals, consultants, and experts over a period of several months. Plaintiffs incurred over $270,000 in expert and consultant fees in preparing for the mediation, working with experts in the fields of hydrogeology, internal medicine, toxicology, air modeling, medical monitoring programs, and economics. Plaintiffs also devoted more than 500 hours of attorney time and more than 900 hours of paralegal time to preparing for mediation and completing the mediation statement. Even using conservative hourly billing rates, the value of that attorney and paralegal time is over $400,000.[5] Plaintiffs undertook those efforts in reliance upon the parties' agreement to participate in the mediation, the continued scheduling of the mediation for July 27 through July 29, 2026, and Perdue's repeated representation that it intended to proceed with the mediation even after filing its motions for leave to file third-party complaints.

---

[4] Should the Court deem it necessary, Plaintiffs can provide the documents reflecting and memorializing these discussions for an *in camera* review subject to any mediation confidentiality concerns.

[5] As discussed later in the brief, Plaintiffs seek reimbursement of only a fraction of the costs incurred in preparing for the mediation, specifically $50,000 for the attorney and paralegal time and $50,000 for the expert and consultant fees and costs.

On June 29, 2026, Plaintiffs submitted a comprehensive mediation statement in accordance with the parties' agreed-upon schedule, supported by nearly 800 pages of expert reports attached to the mediation statement. Plaintiffs' mediation statement again included a categorized calculation of total damages in the case, updated and refined from Plaintiffs' pre-mediation statement based on further expert input, and with totals that were squarely within the range of damages that had been included in Plaintiffs' pre-mediation vetting statement submitted on April 13, 2026. Accordingly, Perdue possessed Plaintiffs' damages analysis before agreeing to the July mediation, before jointly requesting an extension of the stay of deadlines to pursue that mediation, and while repeatedly communicating that it intended to participate in the mediation as scheduled.

Plaintiffs' mediation statement disclosed substantial information intended to facilitate settlement discussions, including information concerning Plaintiffs' expert analyses and the nature and scope of alleged personal injuries among members of the putative class. Plaintiffs made those disclosures and incurred the associated preparation costs with the expectation that the parties would exchange mediation statements, participate in the scheduled mediation, and engage in a meaningful effort to resolve the litigation through that process.

## V. Perdue Cancelled the Mediation Before Its Own Statement Is Due

On July 11, 2026, approximately two weeks before the mediation was scheduled to commence and two days before Perdue's mediation statement was due, Perdue advised Plaintiffs that it would not proceed with the mediation.

By the time Perdue unilaterally cancelled the mediation, Plaintiffs had already completed and submitted their mediation statement and incurred substantial attorney, consultant, and expert costs in preparation for the mediation. Perdue's cancellation came after the parties had completed the pre-mediation vetting process to confirm the viability of mediation, jointly obtained two stays of case deadlines for the stated purpose of pursuing mediation, and after Perdue had obtained the

benefit of those stays in filing its motions for leave to add Johnson Controls and 3M as third-party defendants.

Perdue's unilateral cancellation also occurred after a meet-and-confer that was intended to address the impact of the motions on mediation and further inquiry as to the viability of mediation through Judge Connelly. At no time did Perdue suggest that it did not intend to mediate on the agreed-upon dates or that engaging in such mediation would be a waste of time. To the contrary, Perdue repeatedly confirmed that mediation remained viable and that it intended to proceed. Perdue had also possessed for months the core information underlying Plaintiffs' mediation statement, including Plaintiffs' damages analysis as disclosed during the pre-mediation vetting process. Under these circumstances, Perdue offered no reasonable explanation for its decision to abandon the mediation.

As a result of the cancellation, Plaintiffs were deprived of both the scheduled mediation and the reciprocal exchange of mediation materials that formed a central component of the parties' agreed mediation process. Plaintiffs had already disclosed substantial information for settlement purposes, including extensive expert analyses and details concerning the alleged personal injuries among members of the putative class, while Perdue never submitted a mediation statement before cancelling the mediation. Plaintiffs were also prejudiced by the disruption to the Court's Scheduling Order. The parties jointly obtained stays totaling 137 days for the stated purpose of pursuing mediation, causing discovery and document production to essentially remain dormant during that period. By abandoning the mediation after obtaining the benefit of those stays, Perdue not only delayed Plaintiffs' prosecution of the case, but also deprived the Court of the orderly progression of the litigation contemplated by the Scheduling Order.

**LEGAL STANDARD**

Federal courts possess inherent authority, independent of any rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *United States v. Allergan, Inc.*, No. 1:17-cv-00668-SAG, 2024 WL 2882125, at *5 (D. Md. May 30, 2024) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)). That authority includes the power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* (quoting *Goodyear*, 581 U.S. at 107).

As this Court has explained, district courts "have the inherent power to order sanctions to preserve the integrity of the judicial process and to punish bad-faith conduct intended to delay or disrupt the course of litigation or to impede enforcement of a court order." *Id.* (quoting *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 267 (4th Cir. 2019)). At the same time, sanctions under the Court's inherent authority "may be awarded only in the face of misconduct of some sort." *Id.* (quoting *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 146 (4th Cir. 2020)).

The degree of bad faith sufficient to justify sanctions under the Court's inherent authority includes conduct involving "fraud, deceit, misrepresentation, harassment and unethical conduct." *Id.* (quoting *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 281 (4th Cir. 2022)). When such misconduct is established, the Court may exercise a broad range of inherent powers, including the authority to "assess attorney's fees." *Id.* (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)). The Supreme Court has likewise recognized that "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (cleaned up).

Sanctions imposed pursuant to the Court's inherent authority are remedial in nature. *Keyes Law Firm, LLC v. Napoli*, 120 F.4th 139, 145 (4th Cir. 2024) (citing *Goodyear*, 581 U.S. at 108

(2017)). The Fourth Circuit has explained that a sanctions award should redress the innocent party for the fees and costs incurred "because of" the opposing party's misconduct and that the Court must "establish a causal link" between the sanctioned behavior and the award. *Id.* The purpose of such sanctions "is not to reward lawyers for the value of their work. It is to compensate a litigant for the harm inflicted by his adversary's wrong." *Id.* The Fourth Circuit has therefore emphasized that "the focus . . . remains on making the victim whole." *Id.*

## ARGUMENT

### I. Perdue's Conduct Constituted Bad-Faith Abuse of the Mediation Process and the Court's Stay of Deadlines

The chronology of events is impossible to reconcile with a good-faith effort to pursue the mediation for which the parties jointly obtained two stays of case deadlines from this Court. Perdue obtained a stay of deadlines to explore mediation, completed the pre-mediation vetting process, agreed to a three-day mediation, jointly requested a further three-month stay to focus on that mediation, filed motions for leave to add Johnson Controls and 3M four days later, reaffirmed that the mediation would proceed, waited until Plaintiffs submitted their mediation statement, and then cancelled the mediation two days before its own mediation statement was due. Viewed collectively, that course of conduct supports the conclusion that Perdue never intended to mediate this case in good faith, abused the mediation process and the Court's stay of deadlines to obtain strategic litigation advantages while imposing substantial costs and delays on Plaintiffs. Such conduct falls squarely within the Court's inherent authority to sanction bad-faith conduct intended to delay or disrupt litigation and warrants relief to preserve the integrity of the judicial process. *See Allergan*, 2024 WL 2882125, at *5.

### A. Perdue Obtained and Extended the Stay of Deadlines for the Purpose of Participating in Mediation

The stays of case deadlines at issue here were not sought for general litigation convenience. Rather, the parties jointly represented to the Court that deadlines should be suspended so they could focus on mediation and evaluate the prospect of resolving this case through a formal mediation process. ECF 60, 62. The second stay was requested only after the parties had completed the pre-mediation vetting process to confirm the viability of mediation and agreed to participate in a scheduled three-day mediation before Judge Connelly. ECF 62. Accordingly, the continued suspension of case deadlines rested on the premise that the parties would devote their efforts toward preparing for and participating in the agreed-upon mediation. Because the stays were obtained to facilitate mediation, the Court should evaluate Perdue's subsequent conduct by reference to that stated objective.

### B. Perdue Used the Mediation-Related Stay to Pursue Third-Party Claims Based on a Long-Known AFFF Source Theory

Perdue's conduct following the extension of the mediation-related stay is difficult to reconcile with the purpose for which that relief was obtained. After jointly representing that deadlines should remain suspended so the parties could focus on a scheduled three-day mediation, Perdue filed motions seeking leave to add Johnson Controls and 3M as third-party defendants just four days later and provided notice to Plaintiffs of those motions only one day before filing them.

Nor were the motions prompted by newly discovered information. Perdue had identified AFFF as a known source of PFAS at the Agribusiness Facility by November 2024, yet waited until May 2026, after the mediation had been scheduled and the stay extended, to seek leave to pursue third-party claims.

The timing is especially significant because the parties' agreed-upon Scheduling Order established May 1, 2026, as the deadline for joining additional parties or amending pleadings. ECF

53. Although that deadline was suspended as part of the mediation-related stay, Perdue sought precisely that relief only days after obtaining an extension of the stay. Plaintiffs were not informed of Perdue's intentions while the parties were participating in the pre-mediation vetting process intended to determine the viability of mediation, agreeing to and scheduling mediation, or jointly requesting that deadlines remain suspended through August 3, 2026.

The timing of Perdue's conduct is also notable because Perdue remains engaged in ongoing discussions with the Maryland Department of the Environment concerning the PFAS contamination associated with the Agribusiness Facility. The continued suspension of litigation deadlines was therefore likely to provide Perdue with additional leverage as it pursued both its litigation and regulatory objectives arising from the same contamination issues.

To be sure, Perdue was generally entitled to seek leave to file third-party complaints. The issue is that Perdue sought and obtained a suspension of litigation deadlines for the stated purpose of mediation, while simultaneously pursuing an undisclosed effort to expand the litigation through the addition of new parties. Those circumstances support the now-obvious inference that Perdue was using the mediation-related stay to advance objectives unrelated to the mediation process for which the stay had been obtained.

### C. After Repeatedly Confirming That Mediation Would Proceed, Perdue Cancelled the Mediation Before Its Own Submission Was Due

Following the filing of its motions for leave, Perdue was fully aware that Plaintiffs questioned whether the scheduled mediation could proceed meaningfully. Yet rather than indicating that the mediation should be postponed or abandoned, Perdue repeatedly confirmed that it intended to proceed with the mediation notwithstanding the pending motions for leave.

Plaintiffs relied on those representations. Plaintiffs continued preparing for the mediation, incurred substantial attorneys' fees and expert expenses, and submitted their mediation statement

in accordance with the parties' agreed schedule. Plaintiffs also disclosed substantial information for settlement purposes, including information concerning their damages theories, expert analyses, and the nature and scope of alleged personal injuries among members of the putative class.

Only after Plaintiffs had completed those efforts and submitted their mediation statement did Perdue cancel the mediation. The cancellation occurred approximately two weeks before the mediation was scheduled to begin and two days before Perdue's own mediation statement was due. Perdue never submitted a mediation statement before cancelling the mediation.

This sequence of events cannot fairly be characterized as an ordinary change in litigation strategy. Perdue induced Plaintiffs to continue preparing for mediation, accepted the benefits of those efforts, and then abandoned the process before fulfilling its own corresponding obligations. Considered alongside Perdue's decision to use the mediation-related stay to pursue an undisclosed expansion of the litigation, such conduct constitutes a bad-faith abuse of the mediation process and undermines the integrity of the judicial process. *See Allergan*, 2024 WL 2882125, at *5.

## II. Plaintiffs Suffered Substantial Prejudice as a Result of Perdue's Conduct

Perdue's conduct caused substantial prejudice to Plaintiffs, precisely the type of harm a sanctions award is intended to remedy. *See Keyes Law Firm, LLC v. Napoli*, 120 F.4th 139, 145 (4th Cir. 2024). By the time Perdue cancelled the mediation, Plaintiffs had expended significant resources preparing for a three-day mediation that both parties had agreed to, that had been expressly relied upon in obtaining two stays of case deadlines, and that Perdue had repeatedly reaffirmed would proceed despite its third-party motions.

Plaintiffs incurred substantial attorneys' fees, expert and consultant fees, and related expenses in preparing their mediation statement and supporting materials. Those expenditures were incurred in reliance upon the parties' agreed mediation schedule and Perdue's continued representations that it intended to participate in the mediation. By the time Perdue cancelled the

mediation, Plaintiffs had incurred more than $270,000 in expert and consultant fees and devoted over 500 hours of attorney time and 900 hours of paralegal time to mediation preparation.[6] Even using conservative hourly billing rates, Plaintiffs estimate that the value of the attorney and paralegal time spent preparing for mediation was more than $400,000. Plaintiffs recognize, however, that some portion of the work performed in preparation for mediation may ultimately prove useful in this litigation even though Perdue cancelled the mediation. Accordingly, Plaintiffs seek reimbursement of only a fraction of the costs and expenses incurred, specifically $50,000 for the attorney and paralegal time and $50,000 for the expert and consultant fees incurred in preparing for the mediation.

Plaintiffs were also prejudiced by the disclosure of substantial information for settlement purposes. Plaintiffs' mediation statement included information concerning Plaintiffs' damages theories, expert analyses, and alleged personal injuries among members of the putative class. Those disclosures were made in anticipation of a reciprocal exchange of mediation materials and meaningful participation in a three-day mediation. Instead, Plaintiffs provided that information while receiving none of the reciprocal benefit contemplated by the mediation process, namely Perdue's mediation statement and participation in the scheduled mediation.

Finally, Plaintiffs were prejudiced by the delay resulting from a mediation process that never occurred. Plaintiffs agreed to suspend the litigation schedule for nearly five months so that the parties could focus on mediation. Perdue obtained the benefit of that suspension, including the opportunity to pursue its motions for leave to add third-party defendants while the applicable deadlines remained stayed. After obtaining those benefits, however, Perdue abandoned the mediation process altogether. Plaintiffs were therefore left not only with the costs associated with

---

[6] Plaintiffs can provide declarations, expert and consultant invoices, and other documentation substantiating these fees, costs, expenses, and time expenditures to the Court upon request.

preparing for mediation, but also with the delay caused by suspending the orderly progression of the case for a mediation that never took place. The conduct on the part of Perdue has likely set this case back a year or more and has substantially delayed what will be the ultimate resolution of this matter.

The resulting delay was not limited to the mediation itself. Before the stay was entered, Defendants had made very limited preliminary productions but had not completed document production responsive to Plaintiffs' October 2025 discovery requests. Plaintiffs understood that additional production would have been forthcoming absent the stay before the Scheduling Order's March 6, 2026, deadline for substantial completion for document production expired. As a result, Plaintiffs lost not only the benefit of the anticipated mediation, but also months of discovery progress while the litigation remained suspended.

## III. The Court Should Exercise Its Inherent Authority to Award Appropriate Relief

The circumstances presented here warrant the exercise of the Court's inherent authority. Perdue obtained and extended a stay of case deadlines for the stated purpose of pursuing mediation, used that period to pursue third-party claims relating to an AFFF source of contamination that it had identified at least eighteen months prior, reaffirmed that it intended to proceed with the scheduled mediation, and then cancelled the mediation only after Plaintiffs had incurred substantial costs and submitted their mediation statement. As a direct result of that conduct, Plaintiffs incurred significant attorneys' fees, expert costs, and consultant expenses, disclosed substantial information for settlement purposes, and agreed to a suspension of case deadlines for a mediation that never occurred.

Under these circumstances, Plaintiffs respectfully submit that an award of fees and costs reasonably incurred in preparing for the cancelled mediation is an appropriate exercise of the

Court's inherent authority. Such relief is necessary to compensate Plaintiffs for losses incurred "because of" Perdue's misconduct and to "mak[e] the victim whole." *Keyes*, 120 F.4th at 145. Accordingly, Plaintiffs request an award of $50,000 representing a portion of the attorney and paralegal time devoted to mediation preparation and $50,000 as a partial reimbursement of the expert and consultant expenses incurred in preparing for the mediation.

Plaintiffs further request that the Court terminate the stay of deadlines established pursuant to ECF 61 and ECF 63, order Defendants to complete all document production responsive to Plaintiffs' October 10, 2025, Requests for Production within fourteen days, and issue a revised scheduling order designed to restore the orderly progression of this litigation. Plaintiffs also request such other relief as the Court deems just and proper.

## **CONCLUSION**

Perdue obtained and extended a stay of case deadlines for the stated purpose of pursuing mediation, sought leave to add third-party defendants four days after obtaining that extension, repeatedly confirmed that mediation remained viable and would proceed despite the pending motions, and then cancelled the mediation only after Plaintiffs had incurred substantial costs and submitted their mediation statement. By that point, Plaintiffs had fully performed the obligations required of them under the parties' agreed mediation process, while Perdue had neither submitted its own mediation statement nor participated in the scheduled mediation.

Mediation serves an important role in the administration of this Court's busy docket. To remain a useful case-management tool, parties must honor their commitments and reciprocal obligations under the mediation process. When one party obtains a mediation-related stay of deadlines, induces its adversary to incur substantial mediation-preparation costs and to disclose

substantial information for settlement purposes, and then abandons the process before fulfilling its own corresponding obligations, the integrity and utility of the mediation process are undermined.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion, award Plaintiffs a portion of their reasonable attorneys' fees, expert fees, consultant costs, and other expenses incurred in preparing for the cancelled mediation, terminate the stay of deadlines entered pursuant to the Court's orders entered at ECF 61 and ECF 63, order Defendants to complete all document production responsive to Plaintiffs' October 10, 2025 Requests for Production within fourteen days, issue a revised scheduling order, and grant such other and further relief as the Court deems just and proper.

**BROCKSTEDT MANDALAS FEDERICO LLC**
/s/ Philip C. Federico
Philip C. Federico, Fed ID No. 01216
Chase T. Brockstedt (Admitted *pro hac vice*)
Brent P. Ceryes, Fed ID No. 19192
Catherine M. Cramer (Admitted *pro hac vice*)
Benjamin I. Herskovitz, Fed. ID No. 20928
Stella D. Pratt (Admitted *pro hac vice*)
2850 Quarry Lake Drive, Suite 220
Baltimore, MD 21209
Tel: (410) 421-7777
Fax: (443) 241-7122
pfederico@lawbmf.com
cbrockstedt@lawbmf.com
bceryes@lawbmf.com
ccramer@lawbmf.com
bherskovitz@lawbmf.com
spratt@lawbmf.com

*Counsel for Plaintiffs*

Dated: July 28, 2026